J. I. ROOSEVELT *against* R. MARK and L. MARK.

Where a creditor takes from his debtor a bond, or sealed note, and warrant of attorney, to confess judgment thereon, as security for the moneys lent and advanced to, and responsibilities incurred for his debtor, he cannot, afterwards, resort to an action of *assumpsit*, on any implied or verbal promise of payment or indemnity, but must look to the securities alone.

A bond taken as collateral security for actual advances and responsibilities, is a legal debt, provable under a commission of bankruptcy; and the bankrupt may, therefore, set up his discharge as a bar to any of the demands which such security was intended to cover.

So, a judgment given by the debtor to *T.*, *in trust* for such creditor, as collateral security for existing advances and responsibilities, is legal, and was provable under the late bankrupt law of the *United States*; and all the demands to secure the judgment then given, are barred by the certificate.

But where a judgment or other security is taken, merely by way of indemnity, and such is the condition of the bond, then, until the party is damnified, by having paid, it cannot be proved as a debt, by him, or by trustees for his benefit.

If a demand on a simple contract can be enforced in equity, as well as at law, and the creditor files his bill in equity, the defendant will be allowed the benefit of the statute of limitations, if it would have been a good plea in bar to an action at law.

An acknowledgment by a party, to take the case out of the statute of limitations, must be of a present subsisting debt, and unqualified; and the acknowledgment must be by the party himself. Any payment or act of his assignees, or trustees, who are not parties to the contract, or under any personal obligation to pay or contribute, is not sufficient to create a constructive acknowledgment of the original debtor.

A devise of real and personal estate, for the payment of just debts, does not revive a debt barred by the statute of limitations, or discharged by a certificate of bankrupt.

*June 14th and 15th, and August 24th.* THE bill was filed on the 3d of *November*, 1821, against the defendants, *Rosetta Mark* and *Louis Mark*, as

executors of *Jacob Mark*, deceased, for an account of the estate of the testator, and charging the estate with advances made to the firm of *Mark & Speyer*, of the city of *New-York*, of which *Jacob Mark* was a partner, and for responsibilities incurred for that house.

The plaintiff, between 1796 and 1799, loaned moneys to, and indorsed notes, and became bound in bonds, as surety, and without any valuable consideration, for the house of *M. & S.* These responsibilities were assumed under a promise of security, and indemnity and payment. There were seven notes drawn by *M. & S.*, and endorsed by the plaintiff; and there were five bonds entered into by the plaintiff, with *M. & S.*, as their surety; all these notes and bonds were due and payable, and the plaintiff fixed as endorser, before the bankruptcy of *M. & S.*; and they were paid by the plaintiff since the bankruptcy, and at different times, between the years 1800 and 1810. *M. & S.* dissolved their partnership in *August*, 1799, after all these responsibilities had been incurred, and *M.* took the joint property, and undertook to pay all the joint debts, and renewed to the plaintiff his promise to give security. On the 10th of *December*, 1799, *M.* gave to the plaintiff a sealed note for fifty thousand dollars, payable in 60 days, with a warrant of attorney to confess judgment thereon ; the note was given as a collateral security for the responsibilities of the plaintiff. The note and warrant were executed and delivered to the plaintiff, and, shortly afterwards, were deposited by the plaintiff, at the request of *M.*, with *Nicholas I. Roosevelt*, as trustee for the plaintiff, to remain in his hands until it was necessary to have judgment entered thereon for the plaintiff's security, and to be returned when the plaintiff should require it. In *March*, 1800, the plaintiff applied to *N. I. R.* for the note and warrant, and he refused to deliver them up ; and they were retained by him, and not delivered up to the plaintiff until 1808; and when the plaintiff applied to

*M.* to consent or direct that the note and warrant should be delivered up, or to give the plaintiff other sufficient security in lieu thereof, he refused to give his consent to have the note delivered up, but promised other ample security as a substitute for the note and warrant. He stated, afterwards, that his object in requesting the note to be deposited with *N. I. R.*, was to prevent the plaintiff from entering up judgment on it without necessity; and both *N. I. R.* and *M.* refused to give consent to the plaintiff to enter up judgment upon the note, on the ground that it was not necessary, and might embarrass *M.* in the sale of his real estate. On the 15th of *April*, 1800, *M.*, who had refused to give a judgment or mortgage directly to the plaintiff, for fear his property would be sacrificed, executed a deed in fee, to *Townsend & Jones*, of a large tract of land in *Oneida* county, and a lot in the city of *New-York*, and the same was directed and intended for the benefit and security of the plaintiff in the first instance. He, also, executed to them a bond, with a warrant of attorney, to confess judgment thereon, in the penalty of 200,000 dollars, conditioned to pay 100,000 dollars, on the 18th of *April*, 1800; and this was directed and intended equally for the plaintiff's benefit. The deed and the bond were absolute on the face of them, but were avowedly executed upon the trusts afterwards declared, and judgment was entered on the bond the 19th of *April*, 1800. On the 31st of *May*, 1800, the grantees in the deed executed a formal declaration of trust, (which, from accident and business, was prevented from being concurrent in time with the deed,) and which recited the giving of the bond, warrant of attorney, and deed; and that the plaintiff had, without any consideration, loaned moneys and become bound as surety for *M. & S.*, to 25,000 dollars, and upwards; and that *M. & S.* had considered it to be their duty to indemnify him against those responsibilities. The trustees then declared, that the bond, warrant, judgment,

and conveyance, were given in trust " for the benefit, security, and payment of the plaintiff, of all moneys so loaned by him to *M. & S.*, and of all such sums of money as he had been, or thereafter might be, compelled to pay, for or on account of *M. & S.*, by reason of his voluntary endorsements, or other engagements for them, or either of them." Other trusts were declared of the residue of the property, after the expenses of the trust, and the demands of the plaintiff, should have been satisfied; and the trustees were authorized to sell the trust premises, and to issue execution on the judgment against the property, but not against the body of *M.*

Shortly after this declaration of trust, the plaintiff, not being fully satisfied with this security, as a substitute for the note, applied to *M.* for further and additional security; and, accordingly, on the 13th of *June*, 1800, *M.* gave the plaintiff an order on *John Ferrers*, for insurance moneys received for *M.* On the 11th of *July*, 1800, *M. & S.* became bankrupts; and in *October*, 1800, they obtained a certificate of discharge. None of the demands of the plaintiff, nor any of the securities aforesaid, were proved under the commission of bankruptcy, and no dividend has been declared by the assignees. The plaintiff received some moneys, under the order upon *Ferrers*, in 1803, and again in 1820; and he was prosecuted at law and in equity, by the assignees of *M.*, to have that order upon *Ferrers* set aside. *S.*, one of the partners of *M. & S.*, died abroad in 1816; and in 1820, the plaintiff filed a bill in this Court, against *Jones*, the surviving trustee, and *M'Menomy*, the surviving assignee, under the bankruptcy of *M. & S.*, and against *M.*; and he set forth his advances, &c. and prayed for an account, and that the trust property remaining might be sold, and he paid. A reference was had by consent, and a report of 35,338 dollars, due to the plaintiff, besides costs, &c., to 3351 dollars, was made, and the trust property was ordered to be

sold. It was sold accordingly, for 7813 dollars, subject to dower, to 3104 dollars; and the costs of the suits were 4000 dollars. In 1821, *M.* died, and by his will, dated the 26th of *February,* 1820, he bequeathed his property, " the same being mostly engaged in mercantile pursuits, after all his engagements were fulfilled, to. the defendant." He, also, directed, " that the trade he had been engaged' in for some time past should be continued after his decease by his nephew," (the defendant.) He gave to his wife " one half of all his property which should remain, after all contracts, of what nature and kind soever made by him, were fulfilled." He further added, that " it was his will and desire, that all contracts, whether bonds, notes, letters, agreements, or otherwise, should be punctually and honourably fulfilled and performed."

An order of reference was entered, by consent, and with a reservation of all the points in the case, to compute the amount due to the plaintiff by reason of the matters in the bill. The report of the master stated, that there was due to the plaintiff, on the 22d of *January* last, for principal and interest, 31,894 dollars and 25 cents.

*June* 14*th.* The cause was this day brought to a hearing, on the pleadings, proofs, and exhibits.

*J. I. Roosevelt,* jun. for the plaintiff, contended, 1. That the certificate of discharge of *Jacob Mark,* under the bankrupt law, was no bar to this suit. It was not a debt, at the time, proveable under the commission. Where money is paid by a *surety* after the bankruptcy of his principal, on bonds or notes, executed or indorsed before, though not due at the time of bankruptcy, the surety may recover the amount paid from his principal, notwithstanding the certificate. This was the settled doctrine in *England,* at the time of passing the bankrupt law of the United States; (*Cowp.* 525. *Doug.* 166. *note.* 4 *Term Rep.* 714. 3

*Wils.* 347.) and the doctrine has been recognised by this Court in the case of *Frost* v. *Carter*, (1 *Johns. Cases*, 73.) and, in subsequent cases, (6 *Johns. Rep.* 126. 9 *Johns. Rep.* 127. 15 *Johns. Rep.* 467. 17 *Johns. Rep.* 45.) arising under our insolvent act, the language of which is similar to that of the *English* bankrupt law. The bankrupt law of the *United States* was framed with a view to the *English* statutes and decisions on the subject. The 34th and 39th sections are, in substance, the same as 7 *Geo.* I. ch. 31. s. 2. and 19 *Geo.* II. ch. 32. s. 2. By mentioning demands as *bottomree*, and *respondentia*, specially, as proveable, it is fairly to be inferred, that all other *contingent* demands were intended to be excluded. The provision, also, as to *interest*, shows that the demand must be *certain*, both in amount, and at the *time*. As to the terms, " might have been proved," they had acquired a precise and almost technical meaning, both in the *English* and *American* Courts. The uniform language of the authorities has been, that " debts proveable under the commission, and debts to be discharged by the certificate, are convertible terms." (2 *Bos. & Pull.* 1. 1 *Caines' Rep.* 588. 1 *Johns. Rep.* 97. 2 *Sergeant & Rawle*, 208. 4 *Burr.* 2446. 6 *Johns. Rep.* 126. 1 *Atk.* 129. 1 *H. Bl.* 640. 2 *Term Rep.* 714.)

The sealed note and warrant of attorney, were not an extinguishment of the engagement to give *security*, and to *indemnify* the plaintiff. A *collateral* security, though of a higher nature, does not extinguish the original debt. (1 *Chitty's Pl.* 97. 8 *Johns. Rep.* 62. 7 *Term Rep.* 364. *Doug.* 97. 1 *Barnw. & Alders.* 491. 3 *Johns. Ch. Rep.* 452, 453.)

Again, the note was in the hands of *N. I. R.*, and was nothing else than a bond of indemnity, and could not be proved as a debt under the commission.

The trust lands were conveyed by way of mortgage, or collateral security, not in satisfaction of a debt.

1822.          As to the trust judgment; supposing that it had been
ROOSEVELT  confessed directly to the plaintiff, it would then have been
   v.        no more than a collateral security of a higher nature, given
  MARK.      by one of two joint contractors, and would not have pre-
vented the creditor from suing the original debtors, *M.* and
*S.*, in *assumpsit*, on their contract, or joint promise to in-
demnify. There being, then, two distinct subsisting en-
gagements, the discharge of the one, even if it were ad-
mitted, *would not discharge the other.* (1 *Burr.* 436. 7
*Term Rep.* 612. 6 *Term Rep.* 695. 2 *Bl. Rep.* 1317.
*Mechanics and Farmers' Bank* v. *Capron*, 15 *Johns. Rep.*
467. *Clinton* v. *Hart*, 1 *Johns. Rep.* 375. 8 *Term Rep.*
386.) But the plaintiff had no *legal* rights under this trust
judgment; it gave him nothing but an equitable claim
upon the trustees, for whatever they might receive un-
der it.

The plaintiff could not, by virtue of any right under the
judgment, have been a petitioning creditor. (2 *Str.* 899.)
There was no Court of equity which could compel the
commissioners of a bankrupt to allow the debt to be proved.
(7 *Cranch*, 279. 6 *Cranch*, 307.) The bankrupt law
having passed subsequently to all these engagements and
contracts, is to be construed strictly, and not in reference
to any thing done prior to the day in which the act went
into operation. (7 *Johns. Rep.* 501. 2 *Gallis.* 139.)

2. The next question is, whether the plaintiff's demand
is barred by the statute of limitations? That the statute
is no bar, is clear, (1.) Because, until the 27th of *June*,
1820, the plaintiff's demands were involved in an open
and running account; (5 *Cranch*, 15. 2 *Dallas*, 264.)
(2.) Because, there have been partial payments made
within six years, by the agent of *Mark*, who has, more-
over, repeatedly acknowledged the existence of the plain-
tiff's claim against him. (1 *Hen. Bl.* 34. *Doug.* 639.
1 *Cowp.* 394. 5 *Esp.* 145. *Ballat. on Limit.* 205. *Lofft's
Rep.* 86. 4 *East*, 604. 599. 4 *Johns. Rep.* 461. 6

*Johns. Rep.* 267. 13 *Johns. Rep.* 288. 15 *Johns. Rep.* 3. 516. 17 *Johns. Rep.* 330. 1 *Sergt. & Rawle's Rep.* 180. 2 *H. Bl.* 340. 1 *Powell on Mort.* 270. 4 *Cranch*, 317. 6 *Cranch*, 8. 5 *Taunt.* 596. 8 *Cranch*, 93.)

(4.) Because, many of the payments being made on specialties, the action cannot, properly, be said, in the language of the act, to be founded on a contract without specialty, although it may not be founded on the specialty itself.

(5.) Because, *Mark* having guaranteed the sufficiency of the trust securities, the plaintiff could not, in equity, call upon him, until those securities were exhausted. The credit was extended. The right of action on the guaranty did not accrue until the sale of the lands, in 1820. And, until the contingency happened, the statute did not begin to run. (1 *Bl. Rep.* 354. 4 *Johns. Ch. Cases*, 132.)

(6) Because, of the effect of the trust judgment, which, if it be a valid and subsisting security, for the purposes declared, the statute can have no application; for it is, no longer, a contract without specialty.

(7) Because, *Mark*, by his will, intended that this debt should be paid by his representatives, if the securities failed. (*Toller's Law of Executors*, 288. *Cowp.* 544. 2 *Vernon*, 141. *Prec. in Ch.* 385. 6 *Bro. P. C.* 630. 3 *P. Wms.* 79. 2 *Ambl.* 525.)

*S. Jones*, for the defendants. 1. The debt of the plaintiff is barred by the certificate of discharge under the bankrupt law. The individual promise of *Mark*, was merged in the judgment. The judgment was incident, not to that particular engagement, but to the whole arrangement among the parties. Where a creditor takes such a judgment as an absolute security, he can never, afterwards, return against the principal, upon the original demand. (2 *Term Rep.* 100. 640. 7 *Term Rep.* 97.) The judgment might have been proved under the commission. It was set forth at large in the declaration of trust; and *R.*

was consulted as to its entry. In cases of bankruptcy, the legal debt due, though it may be subject to a defeasance, is provable under the commission. The case cited from *Cowper*, was that of a simple bond of indemnity. If there be a *legal* debt, though it may be liable to be defeated on a future contingency, it may be proved; as a bond, with a penalty, where it has become forfeited, or where there is an absolute judgment for indemnity. (1 *Atk.* 113. 116. 8 *Term Rep.* 386. 7 *Ves.* 301. 8 *Ves.* 334. 531. 2 *Bl. Rep.* 1106. *Doug.* 519. 2 *Rose,* 416. *Whitm. Syst. Bankr.* 292.) An *annuity* for life, is clearly a contingent debt; yet, if secured by a bond, with a penalty, which has become forfeited, the annuity may be valued, and the debt proved. (2 *Christ. B. L.* 636. 600. 1 *Sch. & Lefr.* 50. *Cook's B. L.* 61. *Clinton* v. *Hart,* 1 *Johns. Rep.* 375.) It is true, that a debt, purely contingent or uncertain, cannot be proved; but a debt, capable of being reduced to certainty, may be proved; and the case of an annuity bond is conclusive on this point. The statute speaks of all debts, and an equitable as well as a legal demand may be proved; the great question, in all cases, is, whether the debt or demand is capable of being reduced to a certainty.

It is said, that there was no Court of equity to take cognizance of the question, and to compel the commissioners to admit proof of a debt. In *England,* the remedy is before the Chancellor, sitting in bankruptcy. Here, application might have been made to the judge of the District Court of the *U. S.*; but if the Courts of the *U. S.* have no jurisdiction, then the remedy must be in the Court of Chancery of the state. It is now a matter of right for a creditor, holding a security, to call on the commissioners, and to have the property sold under it. (2 *Rose,* 63. 1 *Ves & Bea.* 518. 1 *Rose,* 322. 5 *Ves.* 357. *Whitm. Syst. Bankr.* 227.) Indeed, the sale of the securities is, in practice, made under a general rule, without any particu-

lar application for it. If he should refuse to permit a sale, he cannot prove his debt, but must look exclusively to his security. (1 *Johns. Rep.* 37. 6 *Term Rep.* 695. per *Grose*, J.) The original promise, then, of *M.*, was merged in the security, as it was a debt which might have been proved. The general rule is, that the creditor is barred by the bankrupt's certificate, in every case, in which his debt might have been proved under the commission. Every creditor, who has a right to prove his debt, is bound to prove it. (7 *Term Rep.* 565. 2 *Bos. & Pull.* 204. 211. 2 *Christ. B. L.* 602. 2 *Hen. Bl.* 570.)

2. The statute of limitations is a bar to the plaintiff's demand. The mere acknowledgment of the existence of a debt, ought never to have been considered as taking it out of the statute ; and the *English* Courts have, of late, shown a disposition to get rid of the rule. In *Sands v. Gelston*, (15 *Johns. Rep.* 511.) Chief Justice *Spencer* has endeavoured to rescue the statute from a construction which would nearly destroy it, and to place the subject on rational grounds. There must be either an express promise, or sufficient evidence to raise an implied promise to pay the debt. (8 *Johns. Rep.* 407. 11 *Johns. Rep.* 146. 13 *Johns. Rep.* 288. 2 *Saund.* 64. n. *a.*)

In *Clementson v. Williams*, (8 *Cranch*, 72.) Chief Justice *Marshall*, speaking of the *English* decisions, says, that they have gone full as far as they ought to be carried. That the statute of limitations was entitled to the same respect with any other statute, and ought not to be explained away. That an acknowledgment, as to the original justice of the account, was not enough. That the statute was enacted to shield persons from ancient claims, whether well or ill founded, which may have been discharged, but the evidence of the discharge lost. In *Battley v. Faulkner*, (3 *Barnw. & Ald. Rep.* 288.) Chief Justice *Abbott* says, the statute of limitations was intended for the relief and quiet of defendants, and to prevent persons being har-

rassed at a distant period of time; and *Bayley*, J. obser-- ved, that one of the objects of the statute was, that actions should be brought to trial at a period of time when the defendant could be prepared with his witnesses to meet the charge.

In *Brandram* v. *Wharton*, (1 *Barnw. & Ald.* 463.) Lord *Ellenborough* says, that the doctrine of rebutting the statute of limitations, by an acknowledgment, other than that of the party himself, began with the case of *Whitcomb* v. *Whiting*, (*Doug.* 652.) and which, he observes, was a case full of hardship. He remarks on the great inconvenience of the doctrine, and that he was not prepared to extend it, so as to deprive any person of the advantage given by the statute, by means of an implied acknowledgment. A devise in trust for the payment of debts, does not include debts barred by the statute of limitations; but only subsisting debts, not barred at the time of the testator's death. (1 *Roberts on Wills*, 219. 1 *Schoales & Lefr.* 107. 3 *Atk.* 107. *Ambl.* 231. 15 *Ves.* 479. 486. Sir *Samuel Romilly, arguendo.*)

All the facts in this case, warrant the presumption, that the debt claimed has been discharged. The plaintiff kept silence for above 20 years; no account was presented; nothing said until, after the death of *Mark*. In 1820, *Mark* was called as a witness by the plaintiff, in a suit against the executors of *Ferrers*, when he swore, that he had no *interest* whatever in the event of the suit, which he could not have done, if he had been chargeable with this debt; for, whatever *R.* recovered from the estate of *Ferrers*, would have so far diminished the amount of the debt claimed by the plaintiff. Again, in 1806, the plaintiff contracted a new debt with *Speyer*, which shows, that he did not consider *M. & S.*, or either of them, as then bound for the debt now claimed. Such a stale demand is entitled to no favour, but ought to be treated with the utmost strictness and severity.

*P. A. Jay*, in reply, said, that the trust deed was not
given, nor intended, by either party, as satisfaction of the
debt.   The fact, that *Mark*, afterwards, gave other secu-
rity, is decisive of the point.   That deed is spoken of,
throughout all the transactions, as a *security*, not as a satis-
faction.

As to the certificate of discharge under the bankrupt
law, there was only an implied contract of indemnity
between *R. & M.*   There was no debt, at the time of the
bankruptcy of *M.*, which *R.* could prove.   The doctrine
laid down in *Frost* v. *Carter*, (1 *Johns. Cas.* 73.) was the
rule as to the proof of debts, by sureties ; and it was the
rule in *England*, in cases of bankruptcy, until the statute
of 49 *Geo.* III. (1809,) which authorized sureties to stand
in the place of their principals.   A surety on an annuity
bond, who pays after bankruptcy of the obligor, may sue,
though the creditor may prove.   (4 *M. & S.* 333.   2 *M.
& S.* 552.)   All the cases of notes and bills, as to sureties,
stood on the same ground as bonds, to the year 1798, and
that is the law here.   The first doubt was raised in *Eng-
land*, in the case of *Cowley* v. *Dunlop*, (7 *Term Rep.* 565.)
as to the endorser of notes ; and Lord *Kenyon* held to the
old rule ; but the Court of C. B. in 5 *Bos. & Pull.* 180,
181. for the first time, established the doctrine laid down
by the other Judges in that case.   The decision in *Sted-
man* v. *Martinnant*, (13 *East*, 427.) was founded on the
stat. 49 *Geo.* III. ch. 121.   The sealed note for 50,000
dollars, was not an existing debt at the time of *M.*'s bank-
ruptcy.   Where a bond and warrant of attorney are given,
with a defeasance, that the judgment is not to be entered
up until a future day, on a contingency, and the obligor
becomes a bankrupt before the day, and judgment is, after-
wards, entered up, on the happening of the contingency,
the judgment is not a debt proveable under the com-
mission.   (*Staines* v. *Planck*, 8 *Term Rep.* 386.)   The
evidence in the case shows, that the trust deed was substi-

1822.

ROOSEVELT
v.
MARK.

tuted for this note ; and judgment could not, therefore, be entered up on it, as a subsisting debt.

As to the plea of the statute of limitations ; the case of *Jackson* v. *Fairbank*, (2 *Hen. Bl. Rep.* 340.) is much stronger than the present. The general principle has been long settled, that an acknowledgment of a debt within six years, though not a promise, is evidence of a promise ; and to raise such promise, the slightest acknowledgment is sufficient ; even though made after the action is brought, and though accompanied with a declaration, that the defendant did not consider himself as owing any thing, because more than six years had elapsed since he contracted the debt. (*Ballant. on Limit.* 190, 191.   3 *Esp. N. P. Cas.* 157. *Cowp.* 548.   *Burr.* 1099.)

THE CHANCELLOR.   This is a bill against the defendants, as executors and devisees of *Jacob Mark*, deceased, for an account of the estate of the testator, and charging the estate with loans to *Mark & Speyer*, and responsibilities incurred for them.

The bill is a substitute for the action of *assumpsit* at law, upon the promise to indemnify, arising from the responsibilities assumed by the plaintiff as surety for *M. & S.*, between 1796 and 1799. The parties have agreed to consider the suit as properly cognizable here, though it would seem to be a case in which the remedy (if any) was full and perfect at law.

The defendants object to the demand :

1. By reason of the securities taken by the plaintiff, or executed on his account, and accepted by him.

2. The discharge of *M.* under the bankrupt act.

3. The statute of limitation and the lapse of time.

4. That the loans made prior to the bankruptcy were barred, and the plaintiff has no right to apply moneys, subsequently received, to those loans.

1. The sealed note for 50,000 dollars, was executed and delivered to the plaintiff, and the deposit of it in the hands of *N. I. R.*, was his own act. He was under no obligation to do it; and he admits that *N. I. R.* became his trustee. He could have compelled a redelivery of the note and warrant, and *N. I. R.* would have been responsible for all the damages of the wrongful intermediate detention. As that note has been since delivered to the plaintiff, and is now under his control, why has he not sued at law upon that specialty, instead of resorting here upon the parol or implied promise, arising out of his engagements? *Mark* did withhold his consent to have the note delivered up to the plaintiff, but the consent of *M.* was not requisite, and his refusal was immaterial. I do not understand, that *N. I. R.* was a joint trustee of *M.* and the plaintiff; for, though the deposit was made at the request of *M.*, it was still a gratuitous act of the plaintiff, and entirely his own disposition of his own property. The note and warrant were absolutely at his disposal, and I think we are entitled to consider the effect of that fact upon the case.

The question is, whether the plaintiff could look beyond this specialty, and resort to the original responsibility of *M. & S.* When the note was taken, *M. & S.* had dissolved partnership, and *M.* had taken the property, and undertaken to pay the debts; and the plaintiff, undoubtedly, looked to *M.*, and to him only, for security and payment.

The case of *Toussaint* v. *Martinnant*, (2 *Term Rep.* 100.) is very analogous. The plaintiff there was surety for the defendant in several bonds, payable by installments, and the defendant gave him, when he became surety, a counter bond and warrant of attorney, for a specific sum, (£1500,) payable before the other bonds; and this judgment bond was given to secure the plaintiff the payment of that sum, for which he had become surety for the defendant. The plaintiff immediately entered up judgment

Where a creditor takes a specialty, or a bond and warrant of attorney, as absolute security for moneys lent, he cannot, afterwards, resort to the original responsibility, or implied assumpsit.

on his bond, and took out execution, and the defendant, afterwards, became bankrupt; and the plaintiff, subsequent to the defendant's discharge, had to pay part of the bonds for which he was surety, and the instalments of which became due after the bankruptcy, and none of which were payable before. The K. B. held, that where a surety took a bond, and did not rely upon the promise which the law would raise, he had chosen his remedy, and his only security was his bond, and he could not resort to an action of *assumpsit*. This express security did away the necessity of a promise in law, and the law will raise none.

If this case be law, then the plaintiff must look to his securities, and he has no right to resort to the promise in law, or to the loose verbal promises of *M.*, at the time, to give security, and to indemnify. Those verbal promises were not of more certain import, nor of greater force, than the implied promise in law, arising from the very nature of the responsibility.

This note and warrant cannot be considered as waived, and given up to *M.*, by any act of the parties. There was an invincible reluctance in *M.*, to have judgment entered up on this note, and *N. I. R.* became, in this respect, subservient to the wishes of *M.*, and did not act the part of a faithful trustee for the plaintiff. But nothing was done by the plaintiff, except that he continued to press for other security; and when the trust deed and the bond to *Townsend & Jones*, were given, he was not satisfied with them, and he procured an order upon *Ferrers*. The sealed note was then suffered to lay passive in the hands of *N. I. R.*, and *M.* certainly considered himself as no longer interested in it, for he was declared a bankrupt, and discharged; and it does not appear that the plaintiff, after the order on *Ferrers*, took any further steps in relation to his own indemnity. He did not interfere, until 1820, with the trust in the hands of *T. & J.*, nor did he renew his application to *N. I. R.* for the sealed note. He seems to have remained quiet and

passive for many years, without any express assent to or dissent from either of these securities, placed for his benefit in the hands of *T. & J.*, and in the hands of *N. I. R.* It is probable that if he had applied to the latter in the summer of 1800, or at any time afterwards, the note and warrant would have been delivered up to him without difficulty, for the withholding of them could not, in the view of *N. I. R.*, have been of any benefit or convenience to *Mark*.

2. This note for 50,000 dollars, which the plaintiff held as security and indemnity, and which was payable in *February*, 1800, was a legal debt, which might have been proved under the commission; and the discharge of *M.* under the bankruptcy act, constituted a bar to any of these demands founded on his being surety for *M. & S.*, and which this note was intended to cover.

The case of *Toussaint* v. *Martinnant*, already cited, is an authority to this point. At law, say the judges in that case, the penalty of the bond became a legal debt, and as soon as it was forfeited, the obligee became a creditor of the bankrupt, and might have proved his debt under the commission; and if he had recovered on the bond, and had not afterwards been damnified as surety, equity would have compelled him to refund.

The case before me is a stronger one than that I have mentioned, for there the debt, for which the plaintiff was surety, was *not due* at the time of the bankruptcy; but here all the notes which the plaintiff had indorsed, and all the bonds in which he was surety, had become payable when the sealed note in question was given.

The case of *Martin* v. *Court*, (2 *Term Rep.* 640.) is also an authority in favour of the right of the plaintiff to have exhibited and proved his note under the commission. The plaintiff in that case was surety in a bond, payable on the 5th of *July*, and he took a counter-bond by way of indemnity, payable on the day preceding. The defendant

VOL. VI. 36

*Margin notes:*

1822.

ROOSEVELT
v.
MARK.

A bond or specialty given as absolute security, is provable under a commission of bankruptcy.

became bankrupt before either bond was payable, and the plaintiff was held to be barred from his remedy upon the bond by the certificate, because his debt might have been proved under the commission, as it was an absolute bond, and the plaintiff there intended to have the money in his own hands before he was called on as surety. So, again, in *Hodgson* v. *Bell*, (7 *Term Rep.* 97.) *A.* was a surety for *B.*, in two bonds, and after one of the bonds was forfeited and not the other, *B.* gave a counter-bond to the plaintiff, conditioned to pay those two bonds, and to indemnify the plaintiff against them. The last bond was not paid, and it was held that the bond to *A.* was forfeited before he was called on to pay, and that *A.* might prove the bond under the commission of bankruptcy, sued out after all the bonds were payable, and before payment. The Court said, that where the debt accrues subsequent to bankruptcy, it cannot be proved under the commission; but where there was a legal debt prior to the bankruptcy, the creditor may come in under the commission. In that case, the bond was forfeited before the bankruptcy, and part of the condition broken, because one of the bonds, for which this was given as an indemnity, was forfeited subsequent to the giving of the security bond. Lord *Kenyon* referred to the doctrine of Lord *Hardwicke*, in *ex parte Winchester* and *ex parte Groome*, (1 *Atk.* 116.) that if a bond be forfeited at law, before the bankruptcy, though in equity the money is not then payable, the Court will avail itself of the debt at law, to protect the party who is in conscience entitled.

I cannot see why these decisions are not applicable and decisive, to show that the plaintiff might have proved his note under the commission. It was a debt absolute at law, and payable; and if the plaintiff had not then actually advanced the money for which he stood fixed and charged as surety, he was absolutely bound, and a default had ensued, and he was liable to suits upon his endorsements and obligations. He was entitled to prove that note as a debt, as much as

the plaintiffs were entitled to prove the legal debt under their bonds in either of the three cases which have been mentioned. He had also a still more indisputable right, for the note was given by way of security for advances *actually then made*, as well as to indemnify against the notes and bonds on which he stood as surety for *M.* I have said, that the plaintiff might have compelled his trustee, *N. I. R.*, with whom the note was deposited, to have produced it. This Court would have required the trustee to have had the note forthcoming before the commissioners in bankruptcy, for the benefit of the plaintiff, or to have delivered it to the plaintiff, or deposited it in Court for his use. There can be no doubt of such a jurisdiction; and I see no colour of reason, from any of the facts in the case, for any doubt as to the propriety of the exercise, and of the actual exercise of the jurisdiction of the Court, if it had been called for.

1822.

ROOSEVELT
v.
MARK.

3. If this note for 50,000 dollars is to be placed out of view, in consequence of the arrangement which took place at the time in respect to it; the next question is, whether the plaintiff might not have proved before the commissioners, the judgment given by *M.* to *T. & J.*, in trust for the plaintiff, to the extent of all his advances and responsibilities.

*A judgment given by a debtor, in trust for a creditor, by way of security for advances and responsibilities, is a legal debt provable under a commission of bankruptcy.*

It was a great mistake, said Lord *Redesdale*, in the case of *Murphy, a Bankrupt*, (1 *Sch. & Lef.* 44.) to suppose, that a debt being provable depends on whether it is a legal debt. It depends on whether it be a debt in law or in equity; for, sitting in cases of bankruptcy, the Lord Chancellor decides on equitable as well as legal debts.

All the cases agree, that a mere contingent debt is not provable under the commission; but if there be a legal debt subsisting before the bankruptcy, though liable to be defeated afterwards upon a contingency, it may be proved under the commission. This was so ruled by the K. B. in *Staines* v. *Planck*, (8 *Term Rep.* 386.) Now, here was

a legal debt subsisting, in the shape of the judgment which stood in the names of *T. & J.*, but which actually belonged to the plaintiff, to the extent of all his demands. In the view of a Court of equity, and in the view of the Lord Chancellor sitting in bankruptcy, it was a legal subsisting debt, of which the plaintiff was a beneficial owner by a title not to be denied or resisted, and the plaintiff, according to the view of the proper tribunal in the case, would have been entitled to prove, as a debt, before the commissioners, the judgment standing in the names of *T. & J.*, equally as if it stood in his own name ; and, consequently, all the cases which have been cited apply to this judgment as well as to the sealed note. Had this judgment bond been made payable in the event that the plaintiff should have paid the notes and bonds on which he stood as surety, or either of them, then it would have been a debt payable on a contingency which did not happen until after the bankruptcy, and the case would have fallen precisely within the decision in *Staines* v. *Planck*. But it was not so ; and the bond and judgment thereon were absolute, and the plaintiff, under them, would have been entitled, *before he paid as surety*, to have required his trustees to have collected under the judgment to the extent of his absolute responsibility as surety. The civil law, as was shown in *Campbell* v. *Macomb*, (4 *Johns. Ch. Rep.* 534.) allowed the surety, after the debt was due and payable, though before payment, to sue for his indemnity.

The judgment in this case was a legal debt, and the plaintiff was the equitable owner, to the extent of all his advances and responsibilities for *M.* He was entitled to all the benefit of that judgment, standing in trust for him, precisely as if it stood in his own name, and a Court of equity would never permit any distinction to be made in such a case, to his prejudice.

Here, then, under this judgment, if not under the prior note, the plaintiff had a legal, subsisting, absolute debt, to

the extent of all his claims, and created on purpose to cover those claims, and which might have been proved under the commission; and the bankrupt's certificate is, consequently, a bar to the whole of the demand under this bill.

The bankrupt act of the *United States*, of *April*, 1800, was a consolidation of the previous provisions in the *English* statutes of bankruptcy; and the *English* decisions on their statutes prior to that date, properly apply as rules of construction to this act of Congress.

By the act, s. 18. the property of the bankrupt is assigned in trust for the use of all the creditors " who should come in and prove their debts under the commission;" and by the 34th section, the bankrupt was to be discharged " from all debts due, or owing, at the time he became a bankrupt, and all which were, or might have been proved under the commission." By the 39th section, creditors who had " given *credit to*, or taken *securities* payable at a future day, from persons who should become bankrupts, and not due at the time of the bankruptcy, might prove their debts and contracts as if they were payable presently;" and " the obligee of any bottomry or *respondentia* bond, and the assured in any policy of insurance, might claim, and after the contingency of loss, prove the debt thereon, in like manner as if the same had happened before the commission, and the bankrupt shall be discharged from such securities, as if such money had been due and payable before the bankruptcy."

These provisions are substantially the same with those in the *English* statutes of 7 *G*. I. c. 31. s. 2. 5 *G*. II. c. 30. s. 7. 19 *G*. II. c. 32. s. 2.; and though the words of our statute, " and all debts which were, or might have been proved under the commission," are not in the *English* statutes, they do not extend the power of proving debts, but leave the provision no broader than it stood under these *English* statutes, for no debts could be proved but

The bankrupt act of the U. S. of *April*, 1800, consolidated the provisions of the *English* statutes of bankruptcy; and the *English* decisions are, therefore, applicable here, in the construction of that act.

1822.

ROOSEVELT
v.
MARK.

what were *due or owing*, except the debts specially provided for in the 39th section.   As Mr. J. *Buller* said, in *Bamford* v. *Burrell*, (2 *Bos. & Pull.* 1.) the creditor must, in every case, swear, that the bankrupt was *indebted* at the time of suing out the commission ; and debts provable under the commission, and debts to be discharged by the certificate, were convertible terms.   Debts not due at the time of the bankruptcy, except in the cases specially provided for by the statute, are not affected by the commission.

If these securities taken by the plaintiff were to be placed out of question, we should then have had, so far as concerns the bonds and notes, the common case of a surety liable to pay before bankruptcy, but not actually paying until after ; and it is very clear, that in such a case the

*In case of a bond or judgment for indemnity merely, or where a party stands merely as bail or surety, there is no debt provable under a commission of bankruptcy, until the party is actually damnified by payment.*

certificate of the bankrupt would be no bar, because the debt to the surety accrues only upon payment, and before that time, it is contingent whether the debt will ever accrue, and it is not a debt due and provable until payment.   The case of *Goddard* v. *Vanderheyden* (3 *Wils.* 262. 2 *Black. Rep.* 794.   2 *Bos. & Pull.* 8. *note*, S. C.) is a leading one, and a great authority on this point.   The plaintiff, in that case, had a judgment against him on a bail bond, as bail for the defendant, and afterwards the defendant was declared a bankrupt, and after that time, and before he obtained his certificate of discharge, the plaintiff paid the judgment debt.   The certificate was no bar to a special action on the case for not indemnifying the plaintiff according to promise, because the plaintiff could not swear to a debt due and owing to him before he actually paid the money.   The cases of *Young* v. *Hockley*, (3 *Wils.* 346.) *Taylor* v. *Mills* and *Magnall*, (*Cowp.* 525.)   *Paul* v. *Jones*, (1 *Term Rep.* 599.)   *Smith* v. *Gale*, (7 *Term Rep.* 364.)   *Frost* v. *Carter*, (1 *Johns. Cas.* 73.)   *Buel* v. *Gordon*, (6 *Johns. Rep.* 126.)   *Lansing* v. *Prendegast*, (9 *Johns. Rep.* 127.) and *Mechanics & Farmers' Bank* v. *Capron*, (15 *Johns. Rep.* 467.) are all to the same point.

If the judgment had been taken merely by way of indemnity, and that had been the condition of the bond upon which it was entered, then the plaintiff, or the trustees for him, could not have sworn to any debt due and owing from *M.*, until the plaintiff had been damnified by payment. But the note, and the bond, and the judgment thereon, were all debts for specific sums due and owing, and *M.* could only have been relieved in equity upon the equitable condition of paying the bonds and notes on which the plaintiff was fixed as his surety. In the case of annuity bonds, if the penalty of the bond for securing the annuity be forfeited before the bankruptcy, the value of the annuity, though contingent, may be proved under the commission, for the redemption of the forfeiture can only be admitted, and the forfeiture relieved, by paying the value of the annuity. (*Perkins* v. *Kempland*, 2 *Black. Rep.* 1106. *Wyllie* v. *Wilkes*, *Doug.* 519. *Meaghan, a Bankrupt*, 1 *Sch.* & *Lef.* 180.) So, in cases of bonds to trustees, for securing a provision to the wife, if there be a remedy at law prior to the bankruptcy, and the bond be forfeited at law, Chancery will avail itself of the debt at law, and allow the trustees to prove, in order to protect the party who is in conscience entitled, though the debt is in equity not then payable, and is suspended upon a defeasance. (*Ex parte Winchester*, and *Ex parte Groome*, 1 *Atk.* 116. cited and approved by Lord *Kenyon*, in 7 *Term Rep.* 98.) So, in the case of a bond to replace stock by a given day, and to pay the dividends in the mean time; if the bond be forfeited before the bankruptcy, either as to the stock, or the dividends, the obligee may, in either case, be admitted to prove the dividends due, and the value of the stock at the date of the commission, by analogy to the case of annuities, *even though the bankruptcy was previous to the time at which the stock was to be replaced.* (*Ex parte Day*, 7 *Ves.* 301. *Ex parte King*, 8 *Ves.* 334.) And in these cases, the discretion of the Chancellor sitting in bankruptcy, to order

*1822.*

ROOSEVELT
v.
MARK.

Bonds to secure annuities, bonds to trustees for securing a provision for a wife, and bonds to replace stock, on a certain day, are provable as legal debts.

1822.

ROOSEVELT
v.
MARK.

proof upon a valuation, instead of a sale of the securities, is regulated by circumstances. (*Ex parte Smith*, 1 *Ves. & Bea.* 518.)

There is a very strong analogy between the case before me, and the class of cases which has been referred to ; and since a complete and absolute debt, in law, was due and owing to the plaintiff's trustees, for his benefit, and on his account, before the bankruptcy, there is no reason why the trustees should not be admitted to prove that debt, and have the value of his equitable demand allowed, equally as in the case of annuities, or of stock, or of a provision for the wife. This case does not fall within the difficulty stated in the case of *The Overseers of St. Martin* v. *Warren*, (1 *Barnw. & Ald.* 491.) For here was not a debt upon a contingency, which was in its nature incapable of valuation, and so not provable under the commission. That was a bastardy case, in which the debt was perfectly uncertain in its value, for there was not only the contingency of life, but of health and uncertain expenses. This case is much more analogous in principle to that of *Clinton & Norton* v. *Hart*, (1 *Johns. Rep.* 375.) in which it was held, that a bond forfeited before the insolvent's discharge, and conditioned to procure certain conveyances to be executed and recorded, contained a debt provable under the insolvent act, in which the rule is the same as in the bankrupt act, as to what debts are to be discharged. The sum was capable of liquidation by the party's own oath. So, here the demand of the plaintiff was capable at once of being ascertained with certainty. He was entitled to have the amount of the loans he had advanced, and the debt for which he was fixed as indorser, or liable to be prosecuted as surety in the bonds, paid him. There was no difficulty in swearing to a precise amount of principal and interest, which, though not actually paid, must certainly be paid by him. I do not discover a case which would authorize me to say, that a surety fixed at law, and having as a

security, an absolute note for a sum certain due and payable, or a judgment in the name of his trustees, but for his use, for a sum certain due and payable, may not be admitted to prove, because the notes upon which he is fixed as indorser, or the forfeited bonds in which he stands as security, have not been actually paid. He has his legal absolute debt, liable only to be defeated on equity by the very remote and possible contingency, in the desperate case of bankruptcy, that he may never be called upon to pay the notes and bonds.

The statute of limitations was also relied upon as forming, of itself, a distinct bar to this suit; and, if I am correct in the view I have taken of the effect of the bankrupt certificate, it will be unnecessary to examine this other ground of defence. But, in a case of so much discussion and difficulty, and involving such nice distinctions, it may be most discreet, as well as satisfactory to the parties, that this branch of the defence should, also, be considered, and it would be very desirable, if the case is hereafter to be submitted to the Court of Appeals.

It has been observed, that this suit was a substitute, by consent, for a special action on the case upon the *assumpsit* arising in law, and the defendants ought to be entitled to avail themselves of the statute of limitations, to this bill in equity, if the statute would have formed a good plea in bar to an action at law. It is certainly a sound principle, that if a demand upon simple contract can be enforced in equity, as well as at law, the benefit of the statute may be had in equity as well as at law, otherwise the creditor, by taking this course, might entirely elude the bar of the statute.

It is upwards of twenty-three years since the plaintiff entered into those engagements for *Mark,* for which he now seeks indemnity and reimbursement, and twenty-two years since *M.* was discharged under the bankrupt act; and the last payment made by the plaintiff, as surety, was

1822.
ROOSEVELT
v.
MARK.

If a demand on a simple contract can be enforced in equity, as well as at law, the debtor has the benefit of the statute of limitations in equity, as well as at law.

1822.

ROOSEVELT
v.
MARK.

ten years before the death of *Mark.* *Prima facie,* then, the statute is a bar to the suit, and it lies with the plaintiff to bring his demand within one of the excepted cases.

As the plaintiff has elected to sue upon the' original parol *assumpsit,* deduced from the fact of his engagements as surety, and the verbal promises of security and indemnity made at the time, he is not entitled to place his demand under the protection of any collateral undertaking of *M.* by specialty. The question is to be considered independent of the sealed note and the bond, and as if these instruments had never been executed.

Then, it may be asked, where is the acknowledgment or evidence of a new promise, within the last six years prior to the death of *M.,* that is to take the case out of the statute? There was no account presented to *M.,* and no personal promise to pay. There were no admissions, that he owed any subsisting debt; and when he was examined as a witness, in 1820, in the suit of the plaintiff, against the executors of *John Ferrers,* he swore he was not interested in the suit; if he had deemed himself chargeable with this demand, he could not have sworn so, because, whatever moneys the plaintiff recovered in that suit, went to diminish his demand in this. An acknowledgment by the party, to take the case out of the statute, must be of a present, subsisting debt. An acknowledgment of a debt, is evidence for a jury to presume a new promise; and it is the new promise, and not the mere acknowledgment, that revives the debt, and takes it out of the statute. (*Clementson* v. *Williams,* 8 *Cranch,* 72. *Danforth* v. *Culver,* 11 *Johns. Rep.* 146. *Johnson* v. *Beardslee,* 15 *Johns. Rep.* 15. Lord *Mansfield,* in *Whitcomb* v. *Whiting,* *Doug.* 652.) There must be an unqualified acknowledgment of a subsisting debt, within six years, to raise a valid promise to pay; and if the acknowledgment be qualified in a way to repel the presumption of a promise to pay, it is not evidence of a promise to pay. The cases of *Danforth* v.

*An acknowledgment, to take a case out of the statute of limitations, must be unqualified, and of a present subsisting debt, within six years.*

*Culver*, (11 *Johns. Rep.* 146.) and of *Lawrence* v. *Hopkins*, (13 *Johns. Rep.* 288.) went upon this distinction, and this is the doctrine explicitly and ably stated in *Sands* v. *Gelston*, (15 *Johns. Rep.* 511.)

If there be no acknowledgment of *Mark*, from which a promise to pay can be deduced, (and I see no evidence of any,) then is there any constructive acknowledgment made by any person, under the order or assignment of *M.*, that will be sufficient to revive the demand? In *Whitcomb* v. *Whiting*, (*Doug.* 652.) it was held, that an acknowledgment by one joint drawer of a promissory note, took the note out of the statute of limitations as to the other drawers, for here one acts virtually as agent for the rest, and all were equally bound as debtors. The case of *Jackson* v. *Fairbank*, (2 *H. Bl.* 340.) went further; and it was held, that payment of a dividend, within six years, under the commission, was such an acknowledgment of the debt, *by the assignees* of one maker of a promissory note, as to take the case out of the statute in respect to the other maker. The payment by the assignees of one maker, was considered equivalent to an acknowledgment by this maker, and sufficient to bring the case within the decision in *Whitcomb* v. *Whiting*. But this last case was questioned and shaken, and not regarded as an authority, which the K. B., in *Brandham* v. *Wharton*, (1 *Barnwell & Ald.* 468.) were prepared to obey. Lord *Ellenborough* said, he was not inclined to go beyond the case in *Douglas*, and there the acknowledgment was not, indeed, by the *party himself*, but by *one of the parties bound*, and who could be called upon for contribution. In the present case, the assignees of *M.* have paid no dividend to the plaintiff; and is it possible, that a recovery or payment, in 1820, of moneys, under the order of *M.* upon *Ferrers*, drawn in 1800, is to be construed into a promise by *M.* to pay and indemnify the plaintiff for his general claims as surety on bonds and notes for *M.*? There would be no

1822.
ROOSEVELT
v.
MARK.

A payment by trustees, or by the assignees of a bankrupt, not being parties to the original contract, will not amount to an acknowledgment of the original debt, so as to take it out of the statute of limitations.

justice in such an inference, nor is there any authority for such a conclusion ; and it may be truly said, that neither the executors of *Ferrers*, nor the trustees in the trust deed to *Townsend & Jones*, were constituted agents of *M.* for any such purpose.    It was equally a forced presumption, and hard and unjust, to consider a payment of a dividend by the assignees of a bankrupt partner, as equivalent to an unqualified acknowledgment by the bankrupt of the debt and promise to pay.    The original debt might thus be kept continually on foot, while the party, originally bound, was wholly unconscious of any such continuing obligation, and was constantly denying the debt, and repelling every presumption of a promise by him to pay.    It is going unreasonably far, to construe payments by assignees or trustees, who are not parties to the contract, or under any personal obligation to pay or contribute, as meaning more than they plainly import, or as carrying with them sufficient evidence of a renewed personal promise of the original debtor to pay.    Such special trusts were not created for any such purpose ; and it is perverting the intention of the parties, and is plainly repugnant to the reason and equity of the trust, to make the ordinary execution of the trust the ground of a constructive new assumption of the debt by the debtor.    The language of the transaction would seem to be directly otherwise.    Lord *Eldon*, in alluding, in *ex parte Dewdney*, (15 *Vesey*, 499.) to the case of *Jackson* v. *Fairbank*, said, *it could not be* that a creditor, who could not, from the effect of the statute of limitations, maintain an action against a solvent partner, might, by forcing a dividend from the assignees of the bankrupt partner, raise a new assumpsit, upon which he could sue the solvent partner.

It is immaterial in this case, whether the statute begins to run from the date of the bond and notes on which the plaintiff was bound for *M.*, or from the forfeiture of them, or from the earliest payment in 1800, or the latest

payment in 1810; because, in the last case, the statute had closed upon the demands before the death of *M.* But I should think the plaintiff had a cause of action when the notes and bonds became payable, and were not paid by *M.*; and he certainly had, upon the first payment. The breach of the contract existed then, and the statute ought to be computed to have run from 1800, or twenty years and more before the death of *M.* In *Battley* v. *Faulkner*, (3 *Barnw. & Ald.* 288.) *A.* delivered to *B.* wheat, but not of a quality according to contract. *B.* was compelled by a suit in *Scotland*, which lasted many years, to pay damages to his vendee, and he then brought *assumpsit* against *A.*, for breach of contract, alleging, as special damage, the damages so recovered. And it was held, that though such special damages occurred within six years, yet the breach of contract, the *gist* of the action, was known to *B.* more than six years before, and the plea of the statute of limitations was held good.

But it is said, that the will of *M.* revives the demand of the plaintiff, though barred by the statute of limitations.

I think it is very apparent, from the language of the will, that the testator never intended to make provision for the debts of the former house of *M. & S.*, and from which he had been discharged twenty years before. He evidently alluded to the debts and contracts of his own creation exclusively, and arising from the new trade " which he had been engaged in for some time past;" and I am satisfied we should grossly pervert the testator's intention, in this case, if we diverted his property, under colour or pretext of some words in the will, to the discharge of his old partnership engagements.

A devise of lands, in trust to pay debts, was formerly supposed to include debts, upon which the statute of limitations had closed. (*Gofton* v. *Mill*, 2 *Vern.* 141. *Blakeway* v. *Strafford*, 2 *P. Wms.* 373. *Andrews* v. *Brown*, *Prec. in Ch.* 385. 3 *P. Wms.* 89. Lord *M.*, in *True-*

*1822.*

ROOSEVELT
v.
MARK.

A devise for the payment of just debts, does not revive a debt barred by the statute of limitations, or discharged by a certificate of a bankrupt or insolvent.

*man* v. *Fenton, Cowp.* 548.) But this doctrine has always been attended with doubt and difficulty. The decree in *Blakeway* v. *Strafford*, was reversed in the House of Lords, and the plea of the statute, which had been overruled, ordered to stand for an answer. Lord *Hardwicke*, in *Lacon* v. *Briggs*, (3 *Atk.* 107.) said, that the judges had always complained of the doctrine; and in *Oughterloney* v. *Earl Powis*, (*Amb.* 231.) he wondered how it came to be so decided. The doctrine of these old cases appears lately to have undergone a reasonable modification; and a distinction was made by Lord *Redesdale,* in the case of *The Executors of Fergus* v. *Gore*, (1 *Sch. & Lef.* 107.) between those debts in respect to which the period of limitation had been already completed in the testator's life, and which are still presumed to be paid, and those upon which the statute has not run, and which, under a provision, by will, for payment of debts, are not subject to be barred by the statute running after the death of the testator, for the trustees neglect shall not prejudice the creditor. All, then, that the cases mean, under this new construction, is, that the statute does not run after the testator's death, against a debt which was not barred by it before his death. In *ex parte Dewdney*, (15 *Ves.* 479.) Lord *Eldon* left it as a doubtful point, whether a devise for the payment of debts revived a debt within the statute; and he thought it extremely questionable, whether the testator so intends, because those debts are presumed to be paid. In arguing that case, *Sir Samuel Romilly*, who was deeply versed in Chancery rules and practice, considered it to be a point of considerable doubt, whether that old doctrine be the established doctrine of the Court; and he said, that Lord *Hardwicke*, Lord *Kenyon*, and Lord *Alvanley*, were all dissatisfied with the rule in *P. Williams*, that a trust for the payment of debts would sustain a claim against the statute of limitations.

The question, which had been a vexed one for a great

length of time, and was quite afloat and unsettled at *West-*  
*minster Hall,* received an elaborate discussion, as late as  
1813, and the cases were all accurately reviewed, and a  
strong, and probably a final settlement of the question,  
made by the Vice Chancellor, in the case of *Burke* v. *Jones,*  
(2 *Ves. & Bea.* 275.)   He decided, that a devise of real  
and personal estate, in trust for the payment of a just debt,  
does not revive a debt upon which the statute of limita-  
tions had taken effect, by the expiration of the time, before  
the testator's death.

He observed, that no case had been cited within the  
period of half a century, in which the rule is stated, that a  
devise in trust for the payment of debts, is to be consi-  
dered either as a waiver of the statute, or as an acknow-  
ledgment that such debts existed and were unpaid, except  
for the purpose of complaining of it.  He then went  
through all the authorities, and said he had spared no  
pains in collecting every case in print, or that he could  
hear of, bearing upon the question ; that he had traced the  
history of this supposed rule to its foundation, and had  
examined to the bottom the authorities on which it had  
been supported, and compared them with the register's  
book.  He concluded, as the result of his research, that  
there was not one case in which this doctrine had been  
established, to the full extent that had been contended ;  
that it rested simply upon *dicta,* opposed to *dicta,* and  
had been disapproved of by every Judge, from the time of  
Lord *Hardwicke ;* that it was contrary to the decision in  
*Legastick* v. *Cowne,* (*Mos.* 391.) and, to the final deci-  
sions in Lord *Strafford's* case, followed by the ultimate  
decision of Lord *King,* and substantially contradicted by  
every subsequent authority.  The doctrine standing upon  
an unnatural conjecture as to the intention, is bad upon  
principle, and pregnant with danger and injury, by invi-  
ting stale demands, and discouraging provisions for the  
payment of debts.  The statute, which was made for the

benefit of those who may have paid, but have not the means of proving it, does not permit a demand of a debt beyond its limits to be enforced, upon the possibility that it may still be undischarged. The plain line is, that the testator intends the Courts of law and equity to determine what are just debts; leaving his executor at liberty to use all means of resistance prescribed or allowed by the law: thus encouraging provisions for creditors by the assurance of a protection to the assets against demands which the testator himself could have resisted, who, relying on the statute, may have destroyed his vouchers.

This decision appears to me to be well founded upon principle, and upon the construction of the authorities, and to put an end to this litigious question. Even without its light and its aid, I should have no hesitation in concluding that the will, in the present case, did not intend to revive debts barred by the statute of limitations, or the bankrupt's discharge, and that it evidently referred to a new class of debts, created by the testator's new trade, subsequent to his bankruptcy.

I have thus endeavoured to examine this case under the various aspects in which it has been presented, and I am not able to perceive any well founded objection to the defence against the plaintiff's claim, whether that defence be placed upon the bankrupt's certificate, or the statute of limitations. I shall, accordingly, decree, that the bill be dismissed without costs.

Decree accordingly.