## ARGUED AND DETERMINED

### IN THE

# *Supreme Court of Errors*

### OF THE

## STATE OF CONNECTICUT.

————:::::❈:::::————

## BOARDMAN and another *against* D. C. and J. H. DE FOREST.

Forbearance of a judgment debt for twenty years, unexplained, raises a presumption of payment.

The reason of the rule is, that a man will naturally enjoy what belongs to him, if not prevented by some impediment, which renders that reason inapplicable to the case.

The insolvency of the debtor constitutes such an impediment ; but the insolvency of one of two joint debtors, the other being solvent, does not.

So the absence of the debtor from the state, constitutes such an impediment ; but the absence of one of two joint debtors, the other being present and accessible to creditors, does not.

The absence requisite to constitute such an impediment, must, in its nature, be permanent, and not merely occasional.

*A.* obtained from the General Assembly, in *May*, 1799, an act of insolvency, discharging him from all debts contracted before the date of his petition, and appointing trustees to receive his effects, and pay over the avails to the creditors to whom such debts were due. In *November*, 1799, *B.* recovered judgment against *A.*, in an action of book-debt, commenced, and for a debt contracted before the date of *A.'s* petition and an execution, issued on this judgment, was exhibited to the trustees, as a claim against *A.'s* estate, under his act of insolvency. Held, that the original debt by contract was extinguished, by the judgment ; and as the judgment debt accrued after the date of the petition, it was not within the jurisdiction of the trustees, and could not be allowed by them.

But if such debt could have been legally allowed, by the trustees, and a dividend thereon had been paid to the creditors ; such payment by the trustees, in the ordinary execution of their trust, would not have been sufficient to repel a presumption against the debt from lapse of time.

Where one of the trustees under such act of insolvency, without any express authority, received the dividend declared in favour of a particular creditor, and passed it to his credit in account ; it was held, that this was no payment, by the trustees, to such creditor.

New Haven,
July,
1823.

Boardman
v.
De Forest.

The certificate given, by the trustees, under such act of insolvency, was void, as impairing the obligation of contracts, and constituted no impediment, legal or actual, to the enforcement of the claims of creditors.

But if such certificate were valid, it could have no operation upon a debt accruing by virtue of a judgment rendered after the passing of the act of insolvency.

This was an action of debt, brought on a judgment of the county court for *Fairfield* county, rendered at the *November* term, 1799. The defendant pleaded *full payment* ; and, on this issue, the cause was tried at *New-Haven, January* term, 1823, before *Hosmer*, Ch. J.

On the trial, the defendants adduced evidence to prove, that *David C. De Forest*, one of the defendants, from the year 1800 or 1801 to the year 1818, with the exception of his residence at *Buenos Ayres* with his family from the year 1811 to the year 1818, and of occasional absence in *Massachusetts*, was a resident in the city of *New-York*, and, during the period specified, was publicly known there, and in this state, and was carrying on business openly ; and that in the year 1818, he removed to *New-Haven*, in this state, where he has lived ever since. The defendants likewise adduced evidence to prove, that *John H. De Forest*, the other defendant, had, ever since the year 1800 or 1801, constantly resided in this state, engaged in business as a merchant, excepting only a few voyages to the *West Indies* and back, of customary length, in the early part of this period, and excepting also a residence in the city of *New-York*, during a part of the years 1818 and 1819, as a broker. It was not claimed by the plaintiffs, that during such period, the defendants, or either of them, concealed person or property ; or that either of them was inaccessible to creditors ; or that any efforts had been made to collect of the defendants the demand in suit. On this evidence the defendants insisted, that the plaintiffs' debt must be considered as having been paid, from the lapse of more than twenty years, without demand. The plaintiffs, on the same evidence, contended, that twenty years had not elapsed ; and that the debt was not paid.

In his charge to the jury, the Chief Justice laid down this general principle, that a judgment debt suffered to lie dormant for twenty years, may be presumed to have been satisfied, from so long forbearance, if unexplained by facts, which destroy the reason of the rule ; and that the rule is founded on this reason, that a man will naturally enjoy what belongs to him, if not prevented by some impediment. The jury were then instructed, that if they should find, that there had been a forbearance of the debt in question for twenty years, without any explanation,

they ought to infer a satisfaction of the judgment. The presumption of payment the plaintiffs attempted to repel, on the following grounds.

1. They contended, that the defendants had been insolvent, and unable to pay their debts. On this point, evidence was adduced, on the one hand, to prove the solvency and ability of the defendants, and on the other, to shew their inability and insolvency. The Chief Justice instructed the jury, that insolvency constituted a sufficient reason for omitting to demand a debt, as it must be nugatory; but that, in this case, if they should find one of the defendants to have been insolvent, and the other solvent, the reason failed in its application.

2. The plaintiffs contended, that the presumption of payment was repelled, by the absence of the defendants from the state. The Chief Justice instructed the jury, that the absence, to explain a total forbearance of demand, must amount to a disability, which it could not, if only one of the defendants was absent, and the other was present and accessible; and as to the nature of the absence to disprove the presumption of payment, that it must be something more than an occasional absence, as would be the making of a voyage to the *West-Indies*, and returning in the customary time and manner; but that a permanent residence or domiciliation abroad, would be an absence amounting to disability.

3. To repel the presumption arising from lapse of time, the plaintiffs contended, that there had been a part payment of their debt, in the year 1804; and to evince this, they exhibited the following documents and proof. 1. An exemplification of the record of the county court of *Fairfield* county, shewing an action of book debt, brought by the prsent plaintiffs against the present defendants, served, by the attachment of personal property, on the 13th of *June* 1798, returnable to the next term of the court, from which it was continued until the term in *November*, 1799, when judgment was rendered for the plaintiffs to recover 90 dollars, 60 cents, debt, and 11 dollars, 51 cents, costs. 2. A copy of an execution on such judgment, dated the 19th of *December*, 1799. 3. An exemplification of a record of the General Assembly, shewing a petition brought by the defendants to that body, dated the 1st day of *April* 1799, and an act or resolve passed thereon, in *May* 1799. The petition stated the misfortunes and insolvency of the petitioners, and their indebtedness to sundry persons, among whom were the present plaintiffs, who were made parties to the petition. The act or

resolve of the General Assembly, after finding, that the creditors named in the petition had been notified according to law, and that the facts stated therein were fully proved, discharged the petitioners, upon their surrendering their property to *Lewis B. Sturges, Joseph Walker* and *Roswell Judson*, Esquires, trustees for the creditors, from all their debts, contracted before the 1st day of *April*, 1799. The trustees were authorized to dispose of the property, which should be delivered up to them, and to pay over the avails to the creditors, in proportion to the amount of their several demands. To these provisions was appended a proviso, that nothing contained in the act should affect the security any creditor might have obtained, by attaching the property of the petitioners, before the date of their petition, and which attachments were then pending in any court of law in this state ; and that any judgments which might be rendered on such attachments should have no effect or operation but upon the property attached. 4. The deposition of *Lewis B. Sturges*, Esq. in which he testified, that the above-mentioned trustees accepted their trust, and proceeded to settle the estate ; that they met, several times, on the business, previous to and on the 28th of *November*, 1804 ; that there was exhibited a demand upon an execution in favour of the present plaintiffs, which was allowed ; that a dividend was made among the creditors, including the plaintiffs, of fourteen cents on the dollar ; that the deponent received the dividend on the plaintiffs' demand, amounting to 15 dollars, 49 cents, to account with them for the same, for which they were credited in his, the deponent's account current with them ; and that there was still a balance due from the plaintiffs to the deponent, for professional services, previously rendered. It was not claimed, that either of the defendants had any knowledge of the exhibition of this execution to the trustees, or of the allowance thereof, or of the reception of the dividend, by Mr. *Sturges.* Nor was it claimed, that the defendants, or either of them, gave any express authority to the trustees respecting such demand. Upon this evidence, the Chief Justice instructed the jury, First, that a payment on the plaintiffs' debt, by the trustees, if it had been duly allowed by the defendants, would be tantamount to an acknowledgment by them, that the balance was due ; and the presumption of payment would thus far be repelled : Secondly, that the trustees were a court of limited jurisdiction, being restrained, by the act of insolvency, to the allowance of debts existing anterior to the 1st of *April*, 1799 ; but that the execu-

New-Haven,
July,
1823.

Boardman
*v.*
De Forest.

tion allowed by them, issuing on a judgment rendered in *November*, 1799, was not embraced by the act of insolvency, nor allowable by the trustees.

4. The plaintiffs insisted, that a legal or actual impediment to the collection of their debt, was created, by the defendants' act of insolvency, which repelled the presumption of payment from lapse of time. The Chief Justice instructed the jury, First, that the act of insolvency being valid only to protect the body, and not to discharge the insolvents from the demands of their creditors, created no legal impediment to a suit on the plaintiffs' judgment to obtain satisfaction out of property : Secondly, that the judgment having been rendered subsequent to the 1st of *April*, 1799, a new debt was thereby originated, and consequently, there existed no impediment to a suit upon it, and to a recovery thereon, to be satisfied, by a levy on property, or on the bodies of the debtors : Thirdly, that a judgment voluntarily obtained by the plaintiffs, and suffered by the defendants, became a debt, and necessarily implied a promise to pay it.

The plaintiffs having adduced in evidence the petition of the defendants to the General Assembly, and the act of insolvency passed thereon, claimed, that the defendants, in their petition, and by making the plaintiffs parties to it, admitted an indebtedness to them, before the 1st of *April*, 1799 ; to rebut which claim of the plaintiffs, the defendants offered *John Humphreys* jun. Esq. as a witness, to prove, that *Daniel Boardman*, one of the plaintiffs, declared to him, in *April*, 1799, that nothing was due to the plaintiffs from the defendants. To the admission of this evidence the plaintiffs objected ; but the Chief Justice admitted it, to rebut such claim of the plaintiffs, and instructed the jury, that it was not any proof of the payment of the judgment debt.

The jury returned a verdict for the defendants ; and the plaintiffs moved for a new trial, on the ground of a misdirection on the several points above stated.

*Sherman* and *W. W. Boardman*, in support of the motion, contended, 1. That the charge was incorrect with regard to the effect of insolvency and absence in removing the presumption of payment arising from lapse of time. The jury were told, that insolvency would not remove the presumption, unless *both* the defendants were insolvent ; nor would absence have this effect, unless *both* were absent. But if one of the defendants

New-Haven,
July,
1823.

Boardman
*v.*
De Forest.

was absent, and the other was insolvent, the presumption would be equally removed, as though both were insolvent, or both were absent, because the impediment, in each case, would be equal. The rule is not technical merely, but is founded on a principle of rational presumption ; and the rule and the principle are precisely coextensive in their application.

2. That the charge was incorrect as to the *nature* of the absence requisite. There may be as real and as insuperable an impediment to the collection of the debt, where the person absent has no domicile or permanent residence abroad, as where he has. The proper inquiry has nothing to do with domiciliation, but is simply whether the absence has been such as to impede the collection of the debt. The debtor's having no domicile or permanent residence abroad, may not help the creditor to enforce his claim. The question, then, is not a matter of law, to be decided at all by the judge, but ought to be left to the jury. They alone are competent to pass upon it.

3. That the payment of a dividend under the defendants' act of insolvency, removed the presumption. *Jackson* v. *Fairbank*, 2 *H. Bla.* 340. cited 2 *Wms. Saund.* 64. *b.* n. 1 *Swift's Dig.* 307. The debt was recognized, by the trustees, at that time, as a subsisting debt.

4. That the action having been commenced before the act of insolvency, the judgment rendered after it was passed did not so far originate a new debt, at the time of its rendition, and extinguish the former debt, as to preclude the creditors from proving it under the act. *Ambrose* v. *Clendon*, 2 *Stra.* 1042. *Bull. N. P.* 182. *Bamford* v. *Burrell*, 2 *Bos. & Pull.* 1. *Bonteflour* v. *Coates, Cowp.* 25. *Blandford* & al. v. *Foote, Cowp.* 138. *Com. Dig. tit.* Bankrupt. D. 34. Ex parte *Bryant*, 1 *Ves. & Bea.* 218. 2 *Johns. Ca.* 281, 2. n.

5. That the act of insolvency constituted an impediment proper for the consideration of the jury as a *matter of fact*, to rebut the presumption arising from the lapse of time. *Dunlop & Co.* v. *Ball*, 2 *Cranch* 180. 184. If, in point of fact, according to the uniform course of decisions, and the general understanding, at the time, no recovery could be had, there was in fact an impediment ; and this is sufficient to rebut the presumption. The impediment, in this case, did not result from the plaintiffs' *ignorance of the law* ; for knowledge would have availed them nothing ; but from a general state of things beyond their controul. Neither law nor common sense will presume,

that a man will enjoy what belongs to him, so long as, in point of fact, he *cannot* enjoy it.

*Daggett* and *N. Smith,* contra, after remarking, That whenever lapse of time is resorted to, as raising a presumption, the length of time necessary for that purpose, is the same as that prescribed in some analogous statute; and that the period for presuming payment of a judgment, in this state, ought to be seventeen years, in analogy to the statute limiting suits on bonds and notes; contended, 1. That if one of the defendants was solvent, the insolvency of the other would not remove the presumption; because the plaintiffs might, in that case, obtain payment of a joint debt, as well as though both were solvent.

2. That for a similar reason, the absence of one of the defendants, the other remaining within reach of process, would not remove the presumption.

3. That a new trial ought not to be granted, for any omission in the charge upon the case now supposed, of the insolvency of one defendant, and the absence of the other; because the plaintiffs did not, at the trial, claim to have made out any such case; nor did they ask for any direction touching it.

4. That the charge was correct as to the nature of the absence necessary to repel a presumption of payment; as the occasional absence of a debtor, leaving property accessible to creditors, would present no obstacle to the collection of the debt.

5. That the presumption of payment was not repelled, by the acts of the trustees under the defendants' act of insolvency. In the first place, the trustees never *paid* any dividend to the plaintiff. One of them put the money into his pocket, and said, he was ready to account for it. Secondly, the trustees had *no authority* to make any acknowledgment for the defendants, or to do any act amounting to such acknowledgment. The case of *Jackson* v. *Fairbank,* proceeded on the ground, that the act of the assignees under the *English* bankrupt law, was the act of the bankrupt himself. But trustees under our acts of insolvency do not, in any sense, represent the insolvent. They have nothing to do, but to receive the effects of the insolvent and the claims of the creditors, to strike the average, and to pay over the money; and this they *must* do, in order to execute their trust. Thirdly, the trustees could not act on the plaintiffs' claim; it being founded on a judgment rendered *after* the passing of the act of insolvency. The original debt was *merged* in this judg-

New-Haven,
July,
1823.

Boardman
v.
De Forest.

ment. But if it were otherwise, it would make no difference in the result ; for it was the judgment debt, and not the original claim, which was exhibited to the trustees and allowed. Fourthly, giving the act of the trustees all the effect that can be claimed, it will still avail the plaintiffs nothing ; because more than seventeen years had elapsed after the payment in question before the commencement of the suit.

6. That the act of insolvency itself could be no impediment, and did not conduce to repel the presumption of payment. First, the act was void, as impairing the obligation of contracts. *Hammett* & al. v. *Anderson*, 3 *Conn. Rep.* 304. and cases therein referred to. Secondly, the judgment, having been rendered *subsequent* to the act of insolvency, could not be affected by it. Admitting the validity of the act of insolvency, it could not, by the terms of it, controul a judgment rendered six months after it was passed. There was not even the semblance of an impediment in the way of the plaintiffs taking out execution, and levying it upon the bodies or property of the defendants.

Hosmer, Ch. J. The general principle stated to the jury, that a debt may be presumed to have been satisfied, when suffered to lie dormant for twenty years, if the forbearance is unexplained by facts, which destroy the reason of the rule, was unexceptionable. That they ought to infer a satisfaction of the debt in question, if there was an unexplained forbearance for the period above-mentioned, is a legal deduction from the preceding principle.

The insolvency of a debtor, it was justly said in the charge of the judge at the trial, constitutes an impediment to the collection of a debt, and repels any presumption of payment from the omission of a demand, which must be nugatory. If, however, there are two joint debtors, one of whom is insolvent, and the other is not, there exists no impediment to the collection of a debt against them. So, if one of them is absent, and the other is not, there is nothing to hinder the demand of payment, or commencement of suit, and the creditor cannot truly say, that he was disabled from the prosecution of his claim. The absence of a debtor for a day, a week, or the ordinary term of a *West India* voyage, cannot be considered of that character and permanency as to constitute a disability to be taken into the account, in order to repel the presumption of payment from lapse of time. The solvency of *John H. De Forest* at all times, and his not having been absent within the principle explained, re-

*New-Haven,*
*July,*
*1823.*

pel the objection of disability, supposed to arise from the incapacity and insolvency of the defendants.

Boardman
*v.*
De Forest.

The plaintiffs, to annul the presumption of payment insisted on by the defendants, have principally relied upon the supposed fact, that in the year 1804, a part of their debt was paid, under the defendants' act of insolvency. This claim admits of several satisfactory answers.

The trustees were invested with a limited jurisdiction, restrained to the allowance of debts existing *anterior* to the first of *April*, 1799; but no debt of this description was ever exhibited to, or allowed by them. An action of book debt was brought by the plaintiffs against the defendants, as early as *June*, 1798, on which they recovered judgment, in *November*, 1799. Upon this judgment an execution issued, which was shewn to the trustees, and allowed by them as a claim against the defendants; and this is the only demand, that ever was exhibited. Now, this was a debt of record, which originated several months subsequent to the period, to which their jurisdiction was limited. Of consequence, the act of allowance by the trustees, was extrajudicial and void. Undoubtedly, the above-mentioned judgment was rendered on a debt, which existed before the 1st of *April*, 1799; but this debt was extinguished, by the judgment. The former debt by contract was changed and determined, by the voluntary procurement of a security of a higher nature. 1 *Roll. Abr.* 648. 70. 71. *Rhodes* v. *Barnes*, 1 *Burr.* 9. *Pleasants* v. *Meng* & al. 1 *Dal.* 380. *Birch* v. *Sharland*, 1 *Term Rep.* 715. It must be admitted, that when two persons are bound, jointly and severally, and the obligee has judgment against one of them, he may sue the other, and that as against him, the nature of the debt is not changed. *Higgen's* case, 6 *Co.* 46. But this rule is entirely inapplicable to the case under discussion, and is founded on the principle of *transit in rem judicatam*, which relates only to the particular cause of action on which the judgment is recovered, operating as a change of remedy from its being of a higher nature. *Drake* v. *Mitchell*, 3 *East*, 251. 258. Hence, it is a decided point, that a judgment, in its effect, is limited to parties and privies, and cannot operate to change any other collateral, concurrent remedy, which the party may have. *Chipman* v. *Martin*, 13 *Johns. Rep.* 240. But the authority of the thing judged is conclusive, when the same thing is again demanded, for the same cause, in the same capacity, and between the same parties. *Poth. Obligations*, 278. Notwithstanding the above doctrine of merger by judgment, at common law, is

incontrovertibly established, under the *English* system of bankruptcy, a different doctrine, by way of exception, has been recognized. In *Ambrose* v. *Clendon*, 2 *Stra.* 1042. it was adjudged, that where a debt by simple contract existed before an act of bankruptcy, and one was afterwards *secretly* committed, and then a bond taken, it did not so far extinguish the simple contract, as to deprive the creditor of the right of petitioning for a commission. *Bull. N. P.* 41. *Dawe* & al. v. *Holdsworth* & al. *Peake's Rep.* 64. This determination was founded on the equitable construction in favour of creditors, and on the necessity of the case. Discard this construction, and the commission of a *secret* act of bankruptcy, than which nothing is more common, would deprive the creditors of the bankrupt by simple contract, at the time of an act of bankruptcy committed, of their right to any part of his estate, if unwittingly they, without knowledge of the act of bankruptcy, should take a bond, or recover a judgment. But what is the analogy between this case and the one before the court? Here was a petition for an act of insolvency, to which the plaintiffs were parties, and after it had been granted, a few days only before the time, when, by the delivery up of their property, the insolvents would have right to their certificate of discharge, the plaintiffs, with full knowledge of the consequences, voluntarily elected to take judgment. What ground of equity, or of general policy, requires the adoption of a precedent founded on a different state of facts, and a departure from the established principles of the common law. There can be none, unless it be a correct postulate, that the creditors of an insolvent ought to be rescued from the anticipated and not inequitable result of their voluntary acts. I will merely subjoin the observation, on this head, that the provisions of the act of insolvency, relative to the suits then depending against the defendants, have no relevancy to this question. They are negative throughout, restraining only the attaching creditors from levying on the general property of the insolvents, and protecting the liens obtained by attachment from the claim of the trustees.

If the plaintiffs' claim had been within the jurisdiction of the trustees, and duly allowed by them, the presumption of payment would not be repelled. In the case of *Jackson* v. *Fairbank*, 2 *H. Bla.* 340. payment of a promissory note in part, by the bankrupt's assignee, was considered as an acknwledgment of the debt by the bankrupt, which took the case out of the statute of limitations. It is very doubtful whether this would

now be recognized as the law of *Westminster-Hall*; and sure I am, that it is not sustainable on principle. The doctrine that the statute of limitations might be rebutted, by the acknowledgment of any other than the party to the contract, originated with the case of *Whitcomb* v. *Whiting, Doug*. 652. By that decision, it was held, than an acknowledgment by one joint maker of a promissory note, took it out of the statute of limitations, as one was considered to act as agent for the rest. This case was, to adopt the words of Lord *Ellenborough*, in *Brandram* v. *Wharton*, 1 *Barnw. & Ald*. 467. *full of hardship*; as a person jointly liable, with thirty or forty others, for a debt, which had been paid by one of them, who had lost the receipt given in proof of it, without knowledge of the fact, and by a random acknowledgment, might subject them all to the obligation of a debt barred by the statute. The case of *Jackson* v. *Fairbank* went further, and decided, that the acknowledgment of debt, by the assignees of one maker of a promissory note, took the case out of the law of limitation. This case in *Brandram* v. *Wharton* was shaken, and not regarded as an authority. It was said, by Lord *Ellenborough*, with whom *Bailey*, J. accorded, that he was not inclined to go beyond the case in *Douglas*, where the acknowledgment was by one of the parties bound, who could be called on for contribution. In *Roosevelt* v. *Mark*, 6 *Johns. Ch. Rep*. 266. 292. it was said, by the late learned Chancellor of the state of *New-York*, that it was a forced presumption, and hard and unjust, to consider the payment of a dividend, by the assignees of a bankrupt partner, as equivalent to an unqualified acknowledgment by the bankrupt, and promise to pay. The original debt might thus be kept continually on foot, while the party originally bound was wholly unconscious of any continuing obligation, and was constantly denying the debt, and repelling every presumption of a promise to pay. It is going unreasonably far to construe payment by assignees or trustees, who are not parties to the contract, or under any personal obligation to pay or contribute, as meaning more than it plainly imports, or as carrying with it sufficient evidence of a renewed personal promise of the original debtor to pay. Such special trusts were not created for any such purpose; and it is preventing the intention of the parties, and is plainly repugnant to the reason and equity of the trust, to make the ordinary execution of the trust the ground of a constructive new assumption of the debt, by the debtor. The language of the transaction would seem to be directly otherwise. Lord *Eldon*,

in ex parte *Dewdney,* 15 *Ves.* jun. 499. when alluding to the case of *Jackson* v. *Fairbank,* said, *it could not be,* that a creditor, who could not, from the effect of the statute of limitations, maintain an action against a solvent partner, might, by forcing a dividend from the assignees of the bankrupt partner, raise a new *assumpsit,* upon which he could sue the solvent partner. I am clearly of the same opinion ; and that the execution of the trust, in this case, lays no foundation for a constructive promise, on the part of the defendants, whereby the statute of limitations, or the presumption of common law, in favour of the defendants, can be defeated.

Were it an admitted legal truth, that the payment of part of the plaintiffs' demand, by the trustees, would amount to an acknowledgment of debt, by the defendants, and of consequence, to a constructive promise, there would be no difference in the result of this case, as *no payment was ever made by them.* The money intended for the plaintiffs, remains, to this day, in the hands of Mr. *Sturges,* one of the trustees, never having been paid, nor, with the creditors' assent, appropriated.

The presumption of payment has been supposed, by the plaintiffs, to have been defeated, by the defendants' certificate under the act of insolvency, which, it has been said, constituted a legal or actual obstruction to the collection of their debt. Had the plaintiffs' demand been embraced, by the act of insolvency, there never has existed a legal or actual impediment to the enforcement of their claim. The act, so far as it regarded the extinguishment of debt, was unconstitutional and void. *Sturges* v. *Crowningshield,* 4 *Wheat. Rep.* 122. *Mc Millan* v. *Mc Neill,* 4 *Wheat. Rep.* 209. *Farmers and Mechanics' Bank of Pennsylvania* v. *Smith,* 6 *Wheat. Rep.* 131. *Smith* v. *Mead,* 3 *Conn. Rep.* 253. *Medbury* v *Hopkins,* 3 *Conn. Rep.* 472. *Hammett* & al. v. *Anderson* & al. 3 *Conn. Rep.* 304. The bodies of the insolvents alone were protected ; and a general misunderstanding of the law, if it, in fact, existed, is an inadmissible supposition. *Stow* v. *Converse,* 3 *Conn. Rep.* 347. *Ignorantia juris neminem excusat.* If, however, the fact were granted, it would have no influence on the case under discussion. The decisions of the courts in this state, on a subject which involved the constitutionality of her laws, were not final ; but to the supreme court of the *United States* there might always have been an appeal for the correction of every error. There was, then, no impediment, in law or fact, against the enforcement of the plaintiffs' claim. *Dunlap & Co.* v. *Ball,* 2 *Cranch* 180. was de-

*New-Haven,*
July,
1823.

Boardman
*v.*
De Forest.

cided on the existence of facts inapplicable to the case. In the state of *Virginia*, where that case arose, by the acts of their legislature, and the facts which there existed, the collection of *British* debts was strictly and literally impeded, from the year 1774, to the termination of the revolutionary war, in *September*, 1783, and afterwards to the year 1807. A part of this period was indispensible to make out a defence in the aforesaid case; and the legislative acts constituted an invincible obstruction to any proceeding; as there was, at that time, no revisionary tribunal, by which the unconstitutional acts of a sovereign state could be annulled.

The case under discussion furnishes one ground of determination, so imperiously conclusive as to put the correctness of the decision, by the judge who tried the cause, beyond all question. Allowing the certificate of the trustees the full effect of extinguishing every claim within its purview, it was a bar to such debts only as existed anterior to the 1st of *April*, 1799. The debt on which the plaintiffs' suit is founded, originated by a judgment rendered in the month of *November*, 1799; several months posterior to the time on which the defendants' certificate could have any operation. This claim has never been obstructed, for a moment, and always might have been enforced. What prevented the taking out of execution? What the commencing of an action of debt on judgment? I confidently answer, *nothing*. The way of recovery, from the time the judgment was rendered, until the presumption of payment arose, was ever open and unobstructed, and without the shadow of an impediment, in law or in fact. The proposition is too intuitively clear, to require either argument or illustration.

The admission of Judge *Humphrey's* testimony, limited as it was to repelling the plaintiffs' evidence, has not been objected to, in the argument, nor is it objectionable.

A new trial ought not to be advised.

CHAPMAN, BRAINARD and BRISTOL, Js. were of the same opinion.

PETERS, J. dissented.

New trial not to be granted.