THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* THE METROPOLITAN SURETY COMPANY, Defendant.

In the Matter of HENRY Y. FLEET, Appellant, *v.* JOHN F. YAWGER, as Receiver of the METROPOLITAN SURETY COMPANY, Respondent.

Insolvent corporations — receivers — claim against surety company maturing after appointment of receiver cannot be proven against assets in hands of receiver.

1. A surety company gave its undertaking in an action where the property of the defendant therein had been attached, whereby it undertook that it would on demand pay to the plaintiff in that

action the amount of any judgment which might be recovered therein against the defendant not exceeding a sum named. Thereafter the surety company became insolvent and a permanent receiver thereof was appointed. Subsequently judgment was recovered against the defendant on whose behalf the undertaking had been given. *Held*, that the claim against the surety company on the undertaking must be valued and determined and its status fixed as of the date of the commencement of the action for its dissolution and that this claim could not be proven against its assets.

2. The rejection of the claim against the assets in the hands of the receiver is, however, without prejudice to the right of the claimant to any security held by the surety company as collateral to its undertaking or its right to share in the surplus, if any, after payment of the provable debts at the date of dissolution or its right to pursue the corporation if it should resume business.

*People* v. *Metropolitan Surety Co.*, 148 App. Div. 512, modified.

(Argued March 19, 1912; decided April 2, 1912.)

APPEAL from an order of the Appellate Division of the Supreme Court in the third judicial department, entered January 15, 1912, which affirmed an order of Special Term confirming the report of a referee disallowing a claim presented to the receiver of an insolvent surety company.

The Metropolitan Surety Company was a domestic corporation authorized by its charter to guarantee " the performance of contracts other than insurance policies " and to execute or guarantee ".bonds and undertakings required or permitted in all actions or proceedings or by law required." On the 5th of January, 1909, an action was commenced in the Supreme Court of this state by the attorney-general in the name of the People to dissolve said company upon the ground that it had become insolvent and was subject to dissolution according to law. Such proceedings were taken in said action that on the 6th of January, 1909, John F. Yawger was appointed temporary receiver of said corporation and on the 30th of January, 1909, such receivership was made permanent and the receiver clothed "with the usual powers and

duties enjoyed and exercised by receivers according to the practice of this court and the statutes in such case made and provided." Mr. Yawger qualified and has ever since acted as permanent receiver.

On the 28th of May, 1906, in an action in the Supreme Court between Henry Y. Fleet as plaintiff and the Nolan Commission Company as defendant, an attachment issued against the property of the defendant was levied upon the sum of $1,920 on deposit in its name and to its credit in the Oyster Bay Bank. On the 15th of June, 1906, upon an application to dissolve said attachment, an undertaking was executed and delivered by the Metropolitan Surety Company, whereby "pursuant to the statute in such case made and provided" it undertook "that the defendant will, on demand, pay to the plaintiff the amount of any judgment which may be recovered in the action against the defendant not exceeding the sum of Two Thousand Nine Hundred and Eighty-seven Dollars ($2,987), with interest." After the dissolution of the surety company and the appointment of a permanent receiver thereof, judgment was recovered in said action against the Nolan Commission Company in favor of Henry Y. Fleet, the plaintiff therein, for $2,809.20. Subsequently said Fleet filed a claim for the amount of said judgment, but the receiver rejected it and thereupon an order was made referring it to a referee "to hear and determine as to the allowance thereof." The referee found the facts substantially as above stated and found as a conclusion of law that "claims under undertakings of an insurance company which has been dissolved for insolvency and placed in the hands of a receiver in an action instituted by the Attorney-General, must be valued and determined and their status fixed as of the date of the commencement of the action for dissolution." He recommended that the claim be disallowed, and, upon application to the court at Special Term, the exceptions of the claimant to the report were overruled,

the report confirmed and the claim dismissed. The Appellate Division, upon appeal, affirmed said order and . the claimant thereupon appealed to this court.

*Alfred T. Davison* for appellant.  By the giving of the undertaking on which this claim is based the Metropolitan Surety Company obligated itself to pay to the claimant the liability of the Nolan Commission Company. (Code Civ. Pro. § 688; *Smith* v. *U. S. E. Co.*, 135 Ill. 279; *Lawlor* v. *M. M. Co.*, 2 App. Div. 552; *Esselstyn* v. *U. S. & G. Co.*, 82 App. Div. 474; *Jones* v. *Gould*, 114 App. Div. 120; *Jones* v. *Gould*, 119 App. Div. 817.) The undertaking now sought to be enforced was not a contingent liability.  (*Wisner* v. *Ocumpaugh*, 71 N. Y. 113.)

*Edward R. Finch* for respondent.  Claims under policies of insurance companies, which have been dissolved for insolvency and placed in the hands of a receiver in an action instituted by the attorney-general, must be valued and determined and their status fixed as of the date of the commencement of the action for dissolution.  (*People* v. *C. A. L. Ins. Co.*, 154 N. Y. 95; *People* v. *A. L. & T. Co.*, 172 N. Y. 371; *People* v. *M. T. Co.*, 187 N. Y. 293; *Fera* v. *Wickham*, 135 N. Y. 223; *Goding* v. *Rosenthal*, 180 Mass. 143; *Comm.* v. *M. M. L. Ins. Co.*, 119 Mass. 45; *Atty.-Gen.* v. *E. A. Ins. Co.*, 175 Mass. 197; *Meyer* v. *Atty.-Gen.*, 32 N. J. Eq. 815; *Comm.* v. *C. M. Ins. Co.*, 20 R. I. 7; *R. L. Co.* v. *Brown*, 4 Ind. App. 92.) The claimant is not entitled to have his claim allowed by the receiver because the claim did not ripen until he obtained his judgment against the attached debtor, which event did not transpire until after the judgment of dissolution against the Metropolitan Surety Company was rendered.  (*People* v. *C. A. L. Ins. Co.*, 154 N. Y. 95; *Goding* v. *Rosenthal*, 180 Mass. 143; *Atty.-Gen.* v. *E. A. Ins. Co.*, 175 Mass. 197; *Wolf* v. *Stix*, 99 U. S. 1.)

VANN, J.   The undertaking in question is in the words of the statute authorizing it, as the promise of the obligor is to pay "the amount of any judgment which may be recovered in the action." (Code Civ. Pro. § 688.)   This was not an absolute but a contingent promise.   It was the promise of a surety which is contingent in its nature. It could become effective in creating an absolute liability only upon the happening of an uncertain event.   The promise must be considered in the light of the facts as they existed when it was made and at that time it was an open question whether the claimant would recover judgment in his action against the Nolan Commission Company.   However probable the result might be it was uncertain, as it depended upon contingencies which could be resolved only in the future.   The action might never be tried and if tried, the plaintiff might fail of success, on the merits, from the death of witnesses, or from some defect of form or procedure.   The amount of a possible recovery would be as uncertain as the question whether there would be any recovery at all.   Both subjects would be open and contingent.   The claimant could not prove any debt for there was no debt, but simply a claim, which might or might not ripen into a debt for some amount, at some time in the future.   The result of every law suit is uncertain until judgment is rendered.   As Chief Justice WAITE once said, speaking of a bond like the one before us: "It was payable on the happening of an event which might never occur, and was, therefore, contingent." (*Wolf* v. *Stix*, 99 U. S. 1, 8.)   The surety company, therefore, was under no obligation to pay, and there was no debt to be paid until the contingent liability was matured by a judgment into an absolute liability.   When that time arrived the surety company had been dissolved and a permanent receiver appointed.

The question presented by this appeal involves the date when the corporate assets constituting a trust fund are to be marshaled, equities adjusted and claims allowed.   In

a leading case, decided upon careful consideration after a review of the authorities, all the judges concurred in holding that " Claims under policies of a life insurance company which has been dissolved for insolvency and placed in the hands of a receiver, in an action instituted by the Attorney-General, must be valued and determined, and their status fixed, as of the date of the commencement of the action for dissolution, and are not affected by the death of the insured after that date and before the distribution of assets." Judge HAIGHT said: " The judgment relates back to the commencement of the action and became effective as of that time, and thereafter the company could not require the payment of premiums or insist upon forfeitures. It is the day on which the court practically takes possession of the assets of the company for the purpose of distribution among its creditors, and consequently is the day on which the rights of creditors should be ascertained and the value of their claims determined." The court appreciated the fact that the rule thus adopted would result in some hardship, but all the judges were of the opinion that any other rule " would so far retard and delay the distribution of the assets as to make its administration practically impossible," and, therefore, that individual claims should " give way to the greater claims of the masses, and to a wise public policy which demands an early distribution of the assets." (*People* v. *Commercial Alliance Life Ins. Co.*, 154 N. Y. 95, 98.)

That case related to policies issued by a life insurance company and the rule was applied although the insured died only five days after the judgment of dissolution. In a contract of life insurance the contingency must happen at some time if the policy remains in force, whereas in the undertaking before us it might never happen. The same rule had previously been applied to claims arising under certificates of membership in assessment life and casualty insurance associations. (*Matter of Equitable*

*Reserve Fund Life Assoc.,* 131 N. Y. 354; *People ex rel. Attorney-General* v. *Life & Reserve Assoc.,* 150 N. Y. 94.)

In a later case we applied it to the assets of a dissolved trust company. (*People* v. *American Loan & Trust Co.,* 172 N. Y. 371, 377.) All the judges united in saying that "A corporation is created by the edict of the legislature and dies at its command. Knowledge is imputed to all who deal with it that when it suspends business the law takes charge of its affairs, liquidates its debts, converts its assets and distributes the proceeds among its creditors. Those who contract with it do so 'with knowledge of the statutory conditions, and these must be deemed to have permeated the agreement and constituted elements of the obligation.' (*People* v. *Globe Mut. Life Ins. Co.,* 91 N. Y. 174, 179; *People* v. *Security Life Ins. & Annuity Co.,* 78 N. Y. 114.) The process of administration provided by law is through a receiver, as the executive arm of the court. He is appointed for the benefit of all the creditors, both preferred and unpreferred, and holds the assets, under the direction of the court, in trust primarily for them and finally for the corporation or its stockholders. Thereupon by operation of law the creditors become the equitable owners of the assets and the administration of affairs is for their benefit as such. The claims of creditors against the defunct corporation differ from their claims against its assets in sequestration, for they are not proved against the insolvent and dissolved nonentity, but against the fund in the receiver's hands. * * * As the decree of dissolution relates back to the day when the court took possession of the assets, the delay is not the act or omission of the corporation, which is *civiliter mortuus,* but is owing to the law and hence should operate neither to benefit nor prejudice any creditor. Distribution should be made as of the date when the delay began, for it was not only caused by the law but was necessary for the protection of all classes of creditors."

The bond of a surety company is practically a contract of insurance and stands on the same basis as an insurance policy so far as the division of assets is concerned. There is no difference in principle and there should be none in practice.

The same rule is applied by courts of equity and bankruptcy and to the distribution of assets under general assignments for the benefit of creditors. In an important case a general assignment for the benefit of creditors, after making certain preferences, directed the assignee "to pay and discharge in full, if the residue of said proceeds is sufficient for that purpose, all the debts and liabilities now due or to grow due from the said party of the first part, with interest thereon." It was held that "liabilities" was used as synonymous with "debts" and that the direction referred only to debts existing at the date of the assignment, including those payable in the future. It was further held that the direction to the assignee did not cover a claim by the lessors of the assignee for deficiencies in rent, arising subsequent to the assignment, under a lease for a term of years made to the assignor before the assignment, the lessors having taken possession of the premises and relet them for the unexpired portion of the term, under a provision permitting that course and making the lessee liable for any deficiency. Judge BRADLEY, writing for the General Term, said: "Such liability was uncertain in extent, and whether there would at the end of the term be any or what amount for which he would be liable could not until then be definitely determined. That liability, such as it was, was not a debt within the meaning applicable to that term in the assignment. (*Matter of Adams*, 15 Abb. N. C. 61.) It is difficult to see in its relation to the subject that the word 'liabilities' was intended to have any more comprehensive meaning than is applicable to the word 'debts.' * * * This fairly imports fixed, definite and liquidated liabilities. Those liabilities are debts." (*Matter of Hevenor*, 70 Hun, 56, 58.)

Upon appeal to this court the order was affirmed and Judge Gray, speaking for all the judges, said: "The liability, which they (the lessors) now assert the assignor to be under, did not, and could not, exist as of the time when the assignment was made; but arose subsequently thereto. Such after-accruing debts, or liabilities, could not be intended to be secured by an assignment, and if an assignor so declared, in the deed of assignment, it would be void. (*Brainerd* v. *Dunning*, 30 N. Y. 211.)" (144 N. Y. 271, 274.)

In a carefully considered case before the General Term of the New York Common Pleas, it was held that "The liability of the assignors, at the time of the assignment, must be ascertained and fixed at a sum certain, whether payable before or after the assignment, to entitle the creditor to a dividend of the insolvent's estate." In *Matter of Adams* (15 Abb. [N. C.] 61, 64), Chief Justice Daly, after alluding to the rule in bankruptcy, except as otherwise provided by statute, stated the reason of the rule as follows: "That as the bankrupt under the act was to be discharged from his debts, the proceeding was to be strictly confined to what was regarded as a debt; and for the further reason, that the creditors whose claims were ascertained and fixed when the bankrupt went into or was brought into bankruptcy, were entitled to share in the distribution of his estate, as soon as it was gathered in, and were not to be delayed by claims against him sounding in damages, which it might take years to determine. It was said that the assets were not to be locked up pending such uncertain litigations, but that matters were to be adjusted according to the relative liabilities of the bankrupt, as they were ascertained and known at the time of the act of bankruptcy, and as his estate then existed; that it was not proper to keep the property, or a certain part of it, until it was ascertained whether somebody who had a claim for damages, which it might take years to determine, would recover any or not."

In an early case it was held that the claim of an indorser of a promissory note given before but not due or paid until after the assignment was not provable against the assignee. Chancellor Kent, then in the Supreme Court, said: "Such debts must be specific and certain sums of money, to which the creditor can make oath as being justly due, or to become due at some specified time; and unless the creditor at the time of the assignment, be able to produce and verify such a debt, he will not be entitled to receive from the assignees his dividend of the insolvent's effects, nor will he be barred from his future action against the insolvent. * * * His demand upon the defendant depended upon the defendant's final non-payment of the note, and his payment of it for him. He stood, in respect to the defendant, in the relation of a surety only, and what portion of the note, if any, short of the whole sum, the defendant himself might be able to pay to the holder, was a matter altogether [uncertain. The plaintiff, therefore, until he paid the 3,000 dollars and took up the note, had not any specific and certain debt due to him from the defendant; and as this debt which is now demanded accrued subsequent to the defendant's discharge, and in consequence of an actual payment by the plaintiff, the plaintiff was not entitled to claim his debt from the assignees of the defendant, and consequently, the discharge of the defendant cannot be a bar to a recovery in the present suit." (*Frost* v. *Carter*, 1 Johns. Cas. 73, 74.) (See, also, *People* v. *Merchants' Trust Co.*, 187 N. Y. 293; *Ford* v. *Andrews*, 9 Wend. 312; *Murray* v. *De Rottenham*, 6 Johns. Ch. 52; *Holyoke* v. *Adams*, 10 N. B. R. 270; Brandenberg on Bankruptcy [3d ed.], § 424.) Certain cases holding otherwise were carefully considered when the rule was finally adopted in *People* v. *Commercial Alliance Life Ins. Co.* (*supra*).

The same rule is applied in other states. (*Goding* v. *Roscenthal*, 180 Mass. 43, 44; *Attorney-General* v. *Equi-*

*table Accident Ins. Assoc.*, 175 Mass. 196; *Commonwealth v. Mass. Mut. Fire Ins. Co.*, 119 Mass. 45, 50; *Fernald v. Johnson*, 71 Me. 437; *Boardman* v. *De Forest*, 5 Conn. 1; *Mayer* v. *Attorney-General*, 32 N. J. Eq. 815; *Insurance Comr.* v. *Commercial Mut. Ins. Co.*, 20 R. I. 7, 9; *Dean & Son's Appeal*, 98 Penn. St. 101.)

If a different rule were applied in the case under consideration, upon what principle could it be placed and where would the line be drawn ? If distribution had been made on the day that the permanent receiver was appointed, as it is in theory but cannot be in practice, the claimant would have had no debt and could have received no dividend, except on the unearned portion of the premium, if any, which is not here involved. The delay that has ensued was owing to action by the courts in carrying out a command of the sovereign power of the state and it was necessary in order to convert the assets into money, but this did not change the rights of existing creditors, nor bring in a new class such as the claimants and others who had no debts when, if possible, distribution would have been made. If one contingent claim is allowed why should not all be allowed, for they all stand on the same footing ? This might cause a delay of many years, which would be unreasonable and unjust. While the record does not say that any contingent claim was presented except by the appellant, the law is the same whether there was one or many and it is probable that there were many from the nature of the business carried on by the surety company. If there were many thousand, as was asserted on the argument, it might be a generation before the last contingency was resolved. Distribution on such a basis would be practically impossible. No classification of claims could be made by attempting to distinguish between those involving a short delay and those involving a long delay, without affecting the obligation of the contract, which depends on the uncertainty of a future event that may happen in a few days, or not until the lapse of years, or not at all. Nor could any safe

10

estimate be made of the value of a contingent claim, because the subject is involved in such uncertainty as to lead to the utmost confusion. Who can tell the present value of a law suit and upon what basis could a valuation thereof be made?

We think that the proper rule was applied by the courts below. While the result in this case is harsh, it is no worse in its effect than if the bank had failed in which the money attached was deposited, or than if the undertaking had been given by private sureties, who had failed. In the great mass of cases for which general rules are necessarily made, the result will not be harsh.

The Appellate Division said in its opinion, but did not make the suggestion effective in its order, that the claimant can have any collateral security given to the surety company, including the money attached if it was deposited as collateral, transferred to himself. This is required by the principle of subrogation, which gives to the creditor all the securities, rights and remedies belonging to the surety. (*Lewis* v. *Palmer*, 28 N. Y. 271; *Arnold* v. *Green*, 116 N. Y. 566.)

The claimant will also be entitled to his proper dividend from any surplus that may remain after all claims in existence, when the action for dissolution was commenced, are paid and discharged. The order as made by the courts below did not cancel or extinguish the claim of the appellant against the corporation, if it should be allowed to resume business, as is possible. They do not affect his right to share in any surplus which would otherwise be returned to the corporation or paid to its stockholders. They simply exclude him, on account of sound public policy founded on convenience if not necessity, from sharing in a trust fund applicable only to claims in existence when the court through its receiver took possession of the corporate assets. The contest is between creditors of the corporation, not between the claimant and the corporation. His contract is not impaired, for it

is still in full force.    (*Mumma* v. *Potomac Co.*, 8 Peters, 281.)  If the orders below stand as they were made without modification, it might be uncertain whether the claim was dismissed on the merits or simply because it was presented prematurely.   While the rights mentioned may be of slight value in this case, they are entitled to protection.

The orders of the Special Term and the Appellate Division should be so modified as to state that they are without prejudice to the right of the claimant to any security held by the surety company as collateral to its undertaking, or its right to share in the surplus, if any, after payment of the provable debts at the date of dissolution, or its right to pursue the corporation if it should resume business, and as so modified affirmed, without costs in this court to either party.

CULLEN, Ch. J., HAIGHT, WILLARD BARTLETT, HISCOCK, CHASE and COLLIN, JJ., concur.

Orders affirmed.