[No. 25028. Department One. June 30, 1934.]

J. E. BERKHEIMER MANUFACTURING COMPANY, *Respondent*, v. AMERICAN WOOD PIPE COMPANY, *Defendant*, AETNA CASUALTY & SURETY COMPANY, *Appellant*.[1]

[1]Reported in 34 P. (2d) 351.

*J. Speed Smith* and *Henry Elliott, Jr.,* for appellant.
*Rex S. Roudebush,* for respondent.

STEINERT, J.—This is an appeal from an order disallowing a claim against the assets and estate of an insolvent corporation now in the hands of a receiver.

The facts which underlie the issues to be determined here are these: American Wood Pipe Company, a corporation, having become insolvent, a receiver was appointed on April 18, 1929, to take possession of, and to liquidate, its assets for the benefit of its creditors. The receiver duly qualified as required by law. The court then entered the usual order respecting notice to creditors and the filing of claims. The notice required that all claims should be served and filed on or prior to July 27, 1929. Thereafter, on September 30, 1929, the receiver filed his report, setting forth in detail all the claims that had been filed and the financial condition of the receivership as of that time.

On February 23, 1932, the receiver filed a subsequent report showing that, after paying all preferred claims

and certain expenses of administration, he had on hand the sum of $18,251.93 available for the payment of the remaining expenses and for distribution among general creditors. The report further stated that the receivership could then be closed except for the fact that there was an outstanding agreement, entered into by the receiver pursuant to an order of the court, with a certain water and power company doing business in the state of Wyoming, under which agreement that company was indebted to the receiver in a sum in excess of twenty thousand dollars. In view of the prospect of being able to collect this amount, or a substantial part of it, the receiver recommended to the court that the receivership proceedings be kept open for that purpose.

After a hearing, the court approved the report and entered an order directing the payment of certain expenses, the distribution of the remainder of the funds among the general creditors ratably, and the keeping open of the receivership pending the settlement of the outstanding claim against the Wyoming company. Pursuant to that order, the receiver paid to the general creditors a partial dividend of 5.4054%. At that time, appellant had not served or filed any claim, and hence was not paid any dividend.

Thereafter, on January 9, 1933, which was nearly three and one-half years after the time for filing claims had expired, appellant served upon the receiver its claim in the sum of $104,493.85, and two days later served its petition for leave to file the claim, which was based on these asserted facts: That, between December 14, 1928, and February 28, 1929, appellant had executed, upon the application of, and as surety for, American Wood Pipe Company, the insolvent defendant herein, a number of bonds in favor of various firms and corporations, including the National Bank of Tacoma,

as obligees; that it had subsequently paid to the bank the sum of $99,087.12 and had incurred an expense of $5,406.73 in litigation attendant upon the settlement of the claims of the bank against it on the bonds.

In its petition for leave to file its claims, appellant alleged that, after the American Wood Pipe Company had been adjudged insolvent, the National Bank of Tacoma had asserted its claims against appellant on the bonds; that appellant had denied liability thereon, and as a consequence, the bank had commenced various actions against it, which it contested, and which were prosecuted to final judgments in the state and Federal courts; that, as a result of such actions, appellant had paid the bank a total sum of $99,087.12 and had incurred expense of litigation in the sum of $5,406.73; and that the amount of its liability to the bank could not have been reasonably ascertained prior to the termination of such litigation, which was about December 8, 1932.

A hearing upon appellant's petition, at which the receiver was present, was held; and at the conclusion thereof, the court, on February 27, 1933, permitted appellant to file its claim in the sum of $99,087.12. None of the creditors, however, appear to have been present at, or to have had any notice of, such hearing. As to them, the hearing was *ex parte*. The record does not disclose that the time for filing claims generally was ever extended. The respondent is a creditor having a large claim, upon which a dividend of less than six per cent has thus far been paid.

On October 27, 1933, the receiver filed a third report, showing that he had collected additional moneys from the Wyoming company and then had on hand the sum of $2,261.51. The report further set forth the subsequent claim of appellant, the details and circumstances of which have already been narrated, and concluded

with a request for instruction as to whether appellant should be permitted to share in the distribution of the funds then on hand, and if so, to what extent. A day for hearing the receiver's report was thereupon fixed, of which the creditors were given notice. The respondent appeared and filed its written objection to appellant's claim, and, after a hearing, the claim was disallowed by the court. This appeal is from the order of disallowance.

The question here is whether appellant should have been permitted to file its claim and have it approved. It will be remembered that the claim was not presented until January 9, 1933, which was nearly three and one-half years after the time for filing claims had expired. The argument of counsel is devoted principally to the question whether appellant had the status of a creditor during the period allowed for the filing of claims. This question, we think, is the crucial one, and under the facts presented, is determinative of the case.

As to the provability of claims against the assets in the hands of a receiver, it may be stated, as a general proposition of law, that claims which are unascertainable and on which no right of action exists at the time that a receiver is appointed can not be proved against such assets; but if the claim is either actionable at the time of such appointment or is then capable of liquidation, it is provable. 23 R. C. L. 102. See, also, footnote to Ann. Cas. 1913D, 1184, for collection of cases.

Various rules have been formulated by the courts for the administration of receivership proceedings. Though they may differ in some particulars in the several jurisdictions, they all have a common purpose, namely, to protect the substantial and relative rights of all the creditors and at the same time to promote and secure an expeditious settlement and disposition

of the estate. Naturally, there will, at times, be some conflict between these two purposes. The attempt to secure full protection to every creditor may result in such delay as to defeat the substantial rights of many. On the other hand, a prompt and expeditious settlement of the estate may be advantageous to the greater number of the creditors and yet result in the utter exclusion of a few. The courts give due regard to both considerations, but in the final analysis, the individual claim must give way to a wise public policy which seeks to secure an early distribution if the greater claims of the masses are thereby subserved, even though harsh results to some may at times seem to follow.

With this as the goal to be sought, the courts generally have attempted to establish a formula by which claims in receivership are to be classified. Under the formula generally adopted, claims are divided into three classes: (1) Those which, at the commencement of the proceedings, furnish a present cause of action; (2) those which, at the commencement of the proceedings, are certain but are not matured, or, in other words, are unliquidated; and (3) those which are contingent. Claims of the first and second classes are uniformly held to be provable; those of the third are not.

But the difficulty does not end with the statement of the rule. The real difficulty is to determine in which one of the three classes a particular claim is to be allocated. Manifestly, appellant's claim did not fall within the first class, because it did not furnish a present cause of action. The question then is whether it falls within the second or within the third class.

A contingent claim is one where no liability yet exists but which is dependent upon the occurrence of some event which creates the liability; an unliquidated claim is one which possesses the element of present

liability, although the time or amount of payment is uncertain and is therefore deferred.

In applying these definitions to the facts of the case at bar, we must keep in mind the distinction between the claim of the National Bank of Tacoma against appellant and the claim of appellant against the receiver. As to the former, the contract liability of appellant to the bank on its bonds originated when appellant executed the bonds; the actionable liability thereon had its inception when the covenants of the bonds were breached. As between the bank and the appellant, therefore, an unliquidated claim arose, in favor of the former against the latter, at the time of the breach. Although the amount of the appellant's liability on the bonds depended upon the outcome of the litigation, the liability was, nevertheless, an absolute, and not a contingent, one.

On the other hand, the claim of appellant against the receiver was wholly contingent until December 8, 1932, long after the expiration of the period for filing claims. It was contingent upon an assertion of claim by the bank against appellant and the *payment* of that claim by appellant, or else, at least, upon an admission or a recognition by appellant that it was a valid, though unliquidated, claim. Until those two contingencies, or at least one of them, occurred, appellant had no claim whatever. Until then, there was nothing except a contingency upon which appellant could rest a claim. It is admitted that the bank's claim was neither paid nor recognized by appellant as a liability against it during the period fixed for filing claims in the receivership. It is not contended that appellant ever considered that it had even an unliquidated claim against the receiver during that period or for a long time thereafter. Appellant therefore did not attain the status of a creditor necessary to bring it within the second class.

The authorities seem to be practically unanimous to the effect that, if a party does not occupy the status of a creditor, having either a matured, or else an unliquidated, claim, during the period for filing claims, his claim can not be approved, even though a subsequent event should vitalize and ripen it. Some of the cases go further, and hold that, to constitute a provable claim, it must be in existence at the time of the adjudication of insolvency or the appointment of the receiver. *Samuels v. Drew & Co.*, 292 Fed. 734; *Merrill v. National Bank*, 173 U. S. 131, 43 L. Ed. 640, 19 S. Ct. 360; *Aldrich v. Chemical National Bank*, 176 U. S. 618, 44 L. Ed. 611, 20 S. Ct. 498; *People v. Commercial Alliance Life Ins. Co.*, 154 N. Y. 95, 47 N. E. 968; *People v. Metropolitan Surety Co.*, 205 N. Y. 135, 98 N. E. 412. The reason assigned for the maintenance of the latter rule is that, where a court of equity appoints a receiver of an insolvent estate, it takes control of the assets and property of the estate for the benefit of all existing creditors, and not for prospective creditors.

Appellant cites and relies upon *Pennsylvania Steel Co. v. New York City Ry. Co.*, 198 Fed. 721, wherein claims were divided, with respect to the question of provability, into two classes: (1) Claims of which the worth or amount can be determined by recognized methods of computation, at a time consistent with the expeditious settlement of the estate; and (2) claims which are so uncertain that their worth can not be so ascertained. It was held in that case that the first class ought to be allowed to be proved and share in the estate, but that the second should not.

. It may well be that, under some circumstances, the rule announced in the *Pennsylvania Steel Co.* case would be more equitable and should commend itself to the conscience of the court, with the result that, in such

cases, the court should exercise its discretion to extend the time for filing particular claims. But the rule as announced in that case does not seem to have been subsequently followed in the same court, for, in *Samuels v. Drew & Co., supra,* which was a later case, that court returned to the original rule that, to constitute a provable claim against assets administered by the court through receivership proceedings, the claim must be in existence at the time of the appointment of the receiver.

But it is not necessary for us to determine, as a matter of first impression in this court, whether the status of the claim must be determined as of the time of the appointment of the receiver or as of the time of the expiration of the period for filing claims. Under either rule, appellant did not have the status of a creditor, since at neither of those times did it have either a present cause of action or an unliquidated claim. Nor, in our opinion, is the case such as demands the application of the extreme rule which, under special circumstances, permits the court to extend the time for filing claims up to the time of final distribution of the assets of the estate. The extension of time and the permission to file claims within that period are matters resting in the sound discretion of the court, the exercise of which will be reviewed only for manifest abuse. The facts and circumstances of this case do not warrant us in holding that the court's discretion in that respect was abused.

The judgment is affirmed.

HOLCOMB, MAIN, MITCHELL, and MILLARD, JJ., concur.